TURNER, Respondent, v. THE TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.

**St. Louis Court of Appeals, June 4, 1908.**

1. **MASTER AND SERVANT: Negligence of Fellow-Servant: Prima-Facie Case.** Where two employees of a railroad company, employed in unloading baggage, were taking a truck load of baggage from a subway to the baggage room above, on an elevator, and where it was the duty of one of the men to see that the truck was properly placed upon the elevator so that it would ascend safely and it was the duty of the other to pull the chain by which the elevator was worked, the failure of the first to properly place the truck, so that it collided with the cage causing an injury to the other employee, was negligence of a fellow-servant.

2. ————: ————: **"Operating Railroad."** Such employees, being engaged in loading and unloading baggage from a passenger train, were engaged in "operating a railroad" within the meaning of the fellow-servant law, section 2873, Annotated Statutes 1906.

3. ————: ————: **Contributory Negligence.** And in such case, the employee injured, was not guilty of contributory negligence in relying upon his fellow-servant to do his customary duty.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*M. F. Watts* and *Wm. R. Gentry* for appellant.

*J. F. Coyle* and *Morrow & Kelley* for respondent.

Plaintiff and Finn were unloading baggage from one of defendant's trains and taking it to the baggage

room. They were "engaged in the work of operating such railroad" within the meaning of the statute. It is a terminal railroad and could not be operated at all without the baggage being put on and off the cars, and taken to and from the baggage room. The fact that Union Station is in a great city and covers blocks can make no difference. The baggage was being unloaded from the car and taken to the baggage room. R. S. 1899, sec. 2873; Stubbs v. Railroad, 85 Mo. App. 192; Thompson v. Chappel, 91 Mo. App. 297; Orendorff v. Terminal Railroad, 116 Mo. App. 348; Callahan v. Railroad, 170 Mo. 473; Sams v. Railroad, 174 Mo. 99; Railroad v. Pontius, 157 U. S. 209; Pontius v. Railroad, 52 Kan. 264; Railroad v. Slahley, 27 U. S. App. 157; Railroad v. Vincent, 56 Kan. 344; Railroad v. Brassfield, 51 Kan. 167; Railroad v. Koehler, 37 Kan. 463; Railroad v. Ivey, 73 Ga. 499; Railroad v. Holey, 25 Kan. 35.

BLAND, P. J.—The defendant is a railroad corporation. It owns Union Station, in the city of St. Louis, and the thirty or more tracks which terminate under its shed at said station; it also owns and operates steam engines over its many miles of track in the city of St. Louis. Passenger trains coming into St. Louis are switched to defendant's terminal tracks, where they are taken up by its locomotives and delivered under the shed at Union Station. Passenger trains leaving the city are taken out of the shed and delivered to the road owning the train. Under the shed, which covers more than two city blocks of ground, is a subway about sixteen or eighteen feet deep with a granitoid floor. Elevators run up and down from this subway to the aisles or passways between the tracks. An elevator known as "elevator No. 1" runs from the subway to defendant's baggage room, which is situated on the west side of the shed. The subway and elevators are used for the

purpose of handling the baggage of passengers arriving
at and departing from Union Station. When a train
arrives, two of defendant's employees elevate a truck
from the subway and push it to the door of the baggage
car. The baggage is then checked up by an employee
of defendant and the train baggage man; as it is checked
it is handed out to the truck men, who load it on the
truck. After the baggage is loaded, the truck is pushed
back on the elevator platform, lowered to the floor of the
subway, and pushed to another elevator or, if the bag-
gage is checked to St. Louis, the truck is pushed to ele-
vator No. 1, and elevated to the baggage room and there
unloaded and stored until called for. The trucks are
from fourteen to sixteen feet long, three and one-half
to four feet in width, with two large wheels in the cen-
ter and a small iron wheel at either end and have han-
dles for pushing them. The elevators are almost a
foot longer than the trucks and slightly wider. When
the elevators are down, a cage or railing protects the
aperture on the surface; when the elevator ascends its
motion causes the cage or railing to descend and when
the elevator descends, the railing ascends, so the cage
passes the elevator both ways, that is, in its ascent and
descent. The elevators are put in motion by pulling a
chain.

On January 21, 1906, a passenger train arrived in
East St. Louis, over the Louisville & Nashville Rail-
road, where it was taken by defendant and hauled into
Union Station and landed on track No. 32, near the
east side of the shed. On its arrival, plaintiff and
John J. Finn, employees of defendant in its baggage
department, elevated a truck from the subway and push-
ed it to the door of the baggage car. The baggage was
checked and handed to them from the door of the car
and they loaded it on the truck, piling it up higher
than their heads. After loading the truck, they let it
down to the floor of the subway and hauled it over to ele-

vator No. 1, and placed it on the platform of that eleva-
tor to be hoisted to the baggage room.    Finn worked
in the lead, that is, he pulled and plaintiff pushed the
truck.    When the truck was loaded on the elevator,
Finn looked to the east and west side of it to see if it
was in position to be elevated in safety.    Plaintiff
stepped to the side of the truck to pull the chain to start
the elevator as soon as Finn should give the signal. Finn
and plaintiff were both on the elevator, it being their
duty to go up with the truck, unload it and bring it
back.    Finn called out, "All right, Turner," and plain-
tiff pulled the chain and the elevator started up.    When
it had ascended ten or twelve feet and the chain to con-
trol its motion had passed beyond plaintiff's reach, it
came in contact with the descending cage, knocking off
some of the baggage and tilting the truck. Finn hallooed
to plaintiff to look out, and plaintiff, fearing for his
life, jumped from the elevator to the granitoid floor and
received a very severe and painful injury to one of his
ankles, disabling him from any kind of work.

The action is bottomed on section 2873, Ann. St.
Mo. 1906, commonly known as the railroad fellow-ser-
vant act.    Plaintiff recovered a judgment for the sum of
$3,000.    Defendant appealed.

1.    The principal contentions of defendant are,
first, that plaintiff's evidence does not show or tend to
show that Finn, his fellow-servant, was guilty of any
negligence, hence the injury was not the result of negli-
gence but of accident, and second, that the service in
which plaintiff was engaged at the time he was injured
was not in the operation of a railroad, and hence his
case does not fall within the provisions of section 2873.
Plaintiff had been employed by defendant in the same
service in which he was engaged when injured for about
three years.    Plaintiff testified that it was, and had
been for all the time he had been employed by defend-
ant, the custom and practice of all employees hand-

ling baggage at the station, for the head man—the man at the front end of the truck, to look and see when the truck he was helping to handle was in proper position to be elevated, and to signal the rear end man when to pull the chain to start the elevator; that the man at the front end was in a better position to see the position of the truck than the man at the rear end, for the reason it was his duty, according to the custom, to step to the side of the truck to be ready to pull the chain as soon as the signal was given. Defendant had no rules and gave no instructions in regard to the details of operating these elevators. Plaintiff testified that it was an easy matter for the man at the front end of the truck to see when it was in proper position on the elevator platform; that all he had to do was to look at the front end and the east side of the truck. From the description of the elevator platform and of the truck, it seems to us, as plaintiff testified, that a man standing at the end of the truck could readily see whether the end of the truck was too near or not near enough to the end of the platform, and whether the side of the truck was a safe distance from the side of the platform. He would only have to look at one end and one side of the truck to ascertain if it was in position, for if they were, the other end and the other side would also be in position. The neglect of so simple a duty and one so easily performed, in view of the certainty that the truck would come in contact with the descending cage, if not in proper position, seems to us to be culpable negligence.

2. We do not think the point, that plaintiff and Finn were not engaged in the operation of a railroad, within the meaning of the Fellow-Servant Act, is well taken. The right to recover under this section is not restricted to cases where the injury is inflicted by reason of the negligence of a fellow-servant while actually moving a train or engine. The term "operating such raidroad," has been construed to include all

work that is directly necessary for running trains over a track and has been held to apply to section hands, engaged in working upon or repairing the track, road-bed and bridges (Callahan v. Railroad, 170 Mo. 475, 71 S. W. 208, affirmed in 194 U. S. 628; Stubbs v. Rail-road, 85 Mo. App. 192; Thompson v. Chappell, 91 Mo. App. 297); to apply to a section hand riding on a hand car (Rice v. Railroad, 92 Mo. App. 35); and to an employee trucking freight from a warehouse to a freight car (Orendorff v. Railroad, 116 Mo. App. 348, 92 S. W. 148). Railroads are required to carry passengers and a limited amount of baggage for each passenger holding a ticket (sec. 1192, Ann. St. Mo. 1906) and are required, under a penalty, to give checks for such baggage (sec. 1100, Ann. St. Mo. 1906). A baggage car is an essential part of a passenger train, and the loading and unloading of baggage is indispensable to the use for which it is set apart. Hence the servants of the company, engaged in moving baggage to and from the train, are engaged in the operation of the train with-in the meaning of the fellow-servant act and its remedial provisions apply to them.

3. We do not think there is any evidence tending to show plaintiff was guilty of negligence. The cus-tom of the rear man to rely upon the man at the front end of the truck to see that it was properly placed on the elevator and give the signal when to start, was of long standing, was a reasonable one and perhaps a necessary one for the orderly and safe operation of the elevators and must, from its long usage, have been known to defendant company and approved by it; espec-ially should this inference be drawn in view of the fact that the company had not promulgated any rules of its own for the guidance of its employees in the operation of the elevators.

The judgment is affirmed. All concur.