## JOHN M. GUNN v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY.

(158 N. W. 1004.)

**Railroads — use and operation — running trains — keeping tracks in repair — hazardous nature — Constitution — equal protection — uniform laws — due process.**

1. The business of running trains, keeping the tracks in repair, and other similar work connected with the use and operation of railroads, belongs to that class of work which may be called railroad work proper, and is of a peculiarly hazardous nature, and for that reason may be placed by statute in a class by itself for the purposes of regulation, without violating the provisions of the constitutions which guarantee the equal protection and the uniform operations of the laws, and freedom from the deprivation of liberty and property without due process of law.

**Freight trains — unloading — railroad work and business.**

2. The unloading of freight trains is work which is directly connected with the operation of the railroad, and belongs to the class which may be termed railroad work proper.

**Statutory discrimination — true test — all similarly treated — like situated.**

3. The true test of unlawful statutory discrimination is whether all who are similarly situated are similarly treated, and whether those who are similarly situated are hindered or prevented in their competition with one another.

**Railroad business — regulation — statute — classes of business.**

4. Where an evil exists which justifies regulation, a statute which seeks to prevent the same is not necessarily invalid because it does not bring all classes of business within its provisions.

**Common carriers — employees — liability to — statutes — damages — negligence — fellow servant.**

5. § 4804 of the Compiled Laws of 1913, which provides that "every common carrier shall be liable to any of its employees . . . for all damages which may result from the negligence of any of its officers, agents, or employees, etc.," is constitutional when applied to a railroad employee who is injured through

---

Note.—As to what is a railroad hazard within the statutes abolishing or restricting the fellow-servant rule as to railroad employees, see notes in 18 L.R.A.(N.S.) 478; 22 L.R.A.(N.S.) 969; and 47 L.R.A.(N.S.) 113 (in which cases pro and con on the question of loading and unloading cars are collected and discussed).

For authorities on the question of validity of statute abrogating fellow-servant rule, see notes in 12 L.R.A.(N.S.) 1040, and 47 L.R.A.(N.S.) 84.

the negligence of a fellow servant while unloading freight from a car which is on the main track of the railroad, and is being unloaded so that the car may be sent out again in the same or in another train a few hours later.

Opinion filed July 12, 1916.

Appeal from the District Court of Divide County; *K. E. Leighton,* J.

Action to recover damages for personal injuries sustained while unloading a freight car.

Judgment for plaintiff. Defendant appeals.

Affirmed.

*John E. Green* and *Palda, Aaker & Greene (Alfred H. Bright* and *John L. Erdall,* of counsel), for appellant.

The so-called "Fellow-Servant Act" of this state does not apply in this case. Comp. Laws 1913, § 4804; Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453.

To come within the operation of the fellow-servant law, the injury must have occurred while the plaintiff or his fellow servant, responsible for the injury, was engaged in the business of operating a railroad. The services here were common to numerous other employees and did not consist of railroad work. Beleal v. Northern P. R. Co. 11 Ann. Cas. 924 et seq. note.

*E. R. Sinkler* and *D. C. Greenleaf,* for respondent.

A railroad company is liable in damages for injuries sustained by one of its employees where, as one of the grounds of negligence, it is shown that an insufficient number of men was employed to do a given piece of work on which the injured person was engaged. Rosin v. Danaher Lumber Co. 2 N. C. C. A. 265, note; Di Bari v. J. W. Bishop Co. 17 L.R.A. (N.S.) 773, note; Johnson v. Ashland Water Co. 71 Wis. 553, 5 Am. St. Rep. 243, 37 N. W. 823, 20 Am. & Eng. Enc. Law, 91; Bonn v. Galveston, H. & S. A. R. Co. — Tex. Civ. App. —, 82 S. W. 808; Peterson v. American Grass Twine Co. 90 Minn. 343, 96 N. W. 913, 15 Am. Neg. Rep. 91; Jones v. Old Dominion Cotton Mills, 82 Va. 140, 3 Am. St. Rep. 92; Mad River & L. E. R. Co. v. Barber, 5 Ohio St. 541, 67 Am. Dec. 312; Booth v. Boston & A. R. Co. 73 N. Y. 38, 29 Am. Rep. 97; Wood, Mast. & S. § 394; Beardsley v. Murray Iron Works Co. 129 Iowa, 675, 106 N. W. 181; Kirk v. Jajko, 224 Ill. 338,

79 N. E. 577; 3 Labatt, Mast. & S. 2912; Fitter v. Iowa Teleph. Co. 143 Iowa, 689, 121 N. W. 48.

It is the duty of the master to furnish enough force to do the work with reasonable safety to all those engaged in it. That if he knew, or by ordinary care could have known, that the force was inadequate, and if plaintiff did not know it, and in consequence of such lack of force plaintiff was injured, the master is liable, except for plaintiff's own negligence. Standard Sanitary Mfg. Co. v. Minor, 33 Ky. L. Rep. 982, 112 S. W. 572; Craig v. Chicago & A. R. Co. 54 Mo. App. 523; Alabama G. S. R. Co. v. Vail, 142 Ala. 134, 110 Am. St. Rep. 23, 38 So. 124; Cheeney v. Ocean S. S. Co. 92 Ga. 726, 44 Am. St. Rep. 113, 19 S. E. 33, 14 Am. Neg. Cas. 69.

Plaintiff was engaged in railroad work, and was within the protection of the statute. The unloading of cars, clearing the tracks, and all such work, is railroad work within the meaning of the statute. Without the doing of such work, trains could not be run, and the general traffic of the railroad would be suspended. It is a part of the operation of the railroad, like the keeping of the tracks in repair and clear, for the running of trains. Turner v. Terminal R. Asso. 132 Mo. App. 38, 111 S. W. 841; Orendorff v. Terminal R. Asso. 116 Mo. App. 348, 92 S. W. 148; Texas C. R. Co. v. Pelfrey, 35 Tex. Civ. App. 501, 80 S. W. 1036; Daley v. Boston & A. R. Co. 147 Mass. 101, 16 N. E. 690; Chicago K. & W. R. Co. v. Pontius, 157 U. S. 209, 39 L. ed. 675, 15 Sup. Ct. Rep. 585; Union P. R. Co. v. Harris, 33 Kan. 416, 6 Pac. 572; Deppe v. Chicago, R. I. & P. R. Co. 36 Iowa, 52; Akeson v. Chicago, B. & Q. R. Co. 106 Iowa, 54, 75 N. W. 676, 4 Am. Neg. Rep. 384; Janssen v. Great Northern R. Co. 109 Minn. 285, 123 N. W. 664; Tay v. Willmar & S. F. R. Co. 100 Minn. 131, 110 N. W. 433; Kreuzer v. Great Northern R. Co. 83 Minn. 385, 86 N. W. 413, 10 Am. Neg. Rep. 293; Anderson v. Great Northern R. Co. 74 Minn. 432, 77 N. W. 240; Southern R. Co. v. Rutledge, 4 Ga. App. 80, 60 S. E. 1011; Baker v. Western & A. R. Co. 68 Ga. 699; St. Louis Merchants' Bridge Terminal R. Co. v. Callahan, 194 U. S. 628, 48 L. ed. 1157, 24 Sup. Ct. Rep. 857, 170 Mo. 473, 60 L.R.A. 252, 94 Am. St. Rep. 746, 71 S. W. 208; Stubbs v. Omaha, K. C. & E. R. Co. 85 Mo. App. 192; Briscoe v. Chicago, B. & Q. R. Co. 130 Mo. App. 513, 109 S. W. 93; Nicholson v. Transylvania R. Co. 138 N. C. 516, 51 S. E. 40; Britt v. Carolina &

N. R. Co. 144 N. C. 242, 56 S. E. 910; Thomas v. Raleigh & A. Airline
R. Co. 129 N. C. 392, 40 S. E. 201; Meo v. Chicago & N. W. R. Co.
138 Wis. 340, 120 N. W. 344; Hardt v. Chicago, M. & St. P. R. Co.
130 Wis. 512, 110 N. W. 427; Luich v. Great Northern R. Co. 152
Wis. 414, 140 N. W. 33; Kiley v. Chicago, M. & St. P. R. Co. 138 Wis.
215, 119 N. W. 309, 120 N. W. 756, 21 Am. Neg. Rep. 394; Pyne v.
Chicago, B. & Q. R. Co. 54 Iowa, 223, 37 Am. Rep. 198, 6 N. W.
282; Reddington v. Chicago, M. & St. P. R. Co. — Iowa, —, 75 N. W.
679; Nichols v. Chicago, M. & St. P. R. Co. 60 Minn. 319, 62 N. W.
386; Hanson v. Northern P. R. Co. 108 Minn. 94, 22 L.R.A.(N.S.)
968, 121 N. W. 607; Njus v. Chicago, M. & St. P. R. Co. 47 Minn. 92,
49 N. W. 527; Metz v. Chicago, B. & Q. R. Co. 88 Neb. 459, 129 N.
W. 994; Sigman v. Southern R. Co. 135 N. C. 181, 47 S. E. 420;
Missouri, K. & T. R. Co. v. Smith, 45 Tex. Civ. App. 128, 99 S. W.
743; St. Louis Southwestern R. Co. v. Thornton, 46 Tex. Civ. App.
649, 103 S. W. 437; Atchison, T. & S. F. R. Co. v. Koehler, 37 Kan.
463, 15 Pac. 567; Atchison, T. & S. F. R. Co. v. Brassfield, 51 Kan.
167, 32 Pac. 815.

The rule of liability must extend to all of a certain class, and equal
protection of the law must be afforded.   Robinson v. Baltimore & O.
R. Co. 237 U. S. 84, 59 L. ed. 849, 35 Sup. Ct. Rep. 491, 8 N. C. C.
A. 1; Thomas v. Boston & M. R. Co. 134 C. C. A. 554, 219 Fed. 180,
8 N. C. C. A. 981; Pedersen v. Delaware, L. & W. R. Co. 229 U. S.
146, 57 L. ed. 1125, 33 Sup. Ct. Rep. 616, Ann. Cas. 1914C, 153, 3 N.
C. C. A. 779; Cousins v. Illinois C. R. Co. 126 Minn. 172, 148 N.
W. 58, 6 N. C. C. A. 182.

BRUCE, J.  This is an action to recover damages occasioned to a rail-
road employee through the carelessness of a fellow servant in allowing
a feed grinder to fall upon him and while unloading freight from a rail-
road car at about 8 o'clock at night, and in order that it might proceed
on its journey the next morning, and which car was standing on the
main track of the railroad, the engine having left and gone to a station
some 10 miles distant in order to get water.  A verdict was rendered
for the plaintiff, and from the judgment entered thereon the defendant
appeals.

The only point argued by counsel for appellant on this appeal is

that the evidence conclusively shows that the plaintiff was injured through the negligence of his fellow servant, Vandervoight, and that § 4804 of the Compiled Laws of 1913, which takes this defense away from railway companies, is not applicable to the case at bar. The statute in question provides that "every common carrier shall be liable to any of its employees, or in case of the death of an employee, to his personal representative, for the benefit of his widow, children or next of kin, for all damages which may result from the negligence of any of its officers, agents or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or works." This act was passed in 1907, and is § 1 of chapter 203 of the Laws of that year.

Counsel's chief reliance is placed upon the language which is used in case of Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 20 Am. Neg. Rep. 453, and the cases collected in the note thereto in 11 Ann. Cas. 924, and in which case this court held that the act did not apply to or protect a laborer who was engaged in cutting ice from the Cheyenne river and loading it into cars for the use of the company, the ice being conveyed by means of a chute to the cars and from a platform which was constructed on the bank of the river. Counsel for appellant argues that under the decision above quoted a railway company is only liable and the act only applies where the employee is engaged in operating the railway and is exposed to the peculiar dangers attending that business. He maintains that the employment of the plaintiff was not of that nature or class, and that under the decision above quoted, the extra-hazardous situation which is incident to such operation is necessary to save the statute from the taint of class legislation. His whole brief and argument indeed is centered around the following quotation from the Beleal Case, and wherein this court said that "there can be no doubt that the business of running trains, keeping the tracks in repair, and other similar work connected with the use and operation of railroads—that class of work which may be called railroad work proper —is of a peculiarly hazardous nature, and for that reason may be properly placed in a class by itself to that extent, for the purpose of imposing on the master a greater liability to the employees so engaged, and giving the latter greater rights against the master in case of injury, than in other occupations; . . . such a classification is proper be-

cause the peculiar nature of the work furnishes a proper basis therefor. The statute in question, however, taken literally, as respondent would have us do, purports to put railroad corporations in a class by themselves, simply because they are such corporations, and imposes upon them a liability from which other corporations under like circumstances are exempt, and extends to employees of a railroad, regardless of the nature of their work, certain rights which other laborers engaged in the same kind of work do not enjoy. Take this case as an illustration. There are many other companies besides railroad companies which lay up ice in large quantities for use in their business. If an ice company or a meat packing concern had had this force of men at work at the same time and place, and with the same apparatus, and the injury had been inflicted under the same circumstances, the master would not have been liable for the negligence of the plaintiff's fellow servant. The liability of the ice company or the packing house as a master would be less than that of the railroad company, and the employee of the latter would have more means of redress for his injury than the employee of some other kind of corporation. There is absolutely no difference in the nature of the work, or in the relative situation or condition of the master and the employee, between a railroad company and any other company gathering ice for its use."

The writer of this opinion, speaking for himself alone, entertains one doubt as to the correctness of the criterion of class legislation which is announced in the quotation above referred to.

But be this as it may, the Beleal Case and the case at bar are by no means parallel in their facts, but, on the other hand, involve totally different relations.

It is conceded in the Beleal Case "that the business of running trains, keeping the tracks in repair, and other similar work connected with the use and operation of railroads,—*that class of work which may be called railroad work proper,*—is of a peculiarly hazardous nature, and for that reason may be properly placed in a class by itself," and can we say that the unloading of freight trains which are standing upon the main tracks of a railroad, and even though an engine is not attached thereto, is not work of this class and is not "railroad work proper?" We certainly cannot so hold, and we have authority for refusing so to do.

"In the operation of a railroad," says the Missouri court of appeals, "it is as necessary to load and unload freight cars as it is to hitch an engine to them and haul them back and forth over the road, and the work is as directly connected with the operation of the road as is any other service a railroad company is required by law to perform." Orendorff v. Terminal R. Asso. 116 Mo. App. 348, 92 S. W. 148.

Being then "railroad work proper," there is absolutely no support in reason or in the authorities for the contention that the provisions of the state and Federal Constitutions which guarantee the equal protection and uniform operation of the law and freedom from the deprivation of property or liberty without due process of law are in any way impinged by the verdict and judgment in the case at bar, and it is these provisions only which can in any way be involved.

Though, indeed, we often find the term class legislation carelessly used, and to such an extent that one would almost come to believe that practically no protective legislation can be upheld, the term is nowhere to be found in our Constitutions, and as a matter of fact class legislation is not forbidden. All, indeed, that is required is that there shall be a reasonable public necessity for the law or statute, and that it shall apply generally to all who are equally affected. "It would practically defeat legislation if it was laid down as a rule that a statute must necessarily be adjudged invalid if it did not bring all within its scope or subject all to the same burdens." Cotting v. Kansas City Stock Yards Co. 183 U. S. 111, 46 L. ed. 109, 22 Sup. Ct. Rep. 43; State v. Olson, 26 N. D. 304, L.R.A.—, —, 144 N. W. 661.

The true test of unlawful statutory discrimination is merely whether all who are similarly situated are similarly treated or affected, or, to put it another way and in the language of the business world, whether one is really hindered in his competition with others. There is no competition between the railroad company and the manufacturer, or ordinary business man. Except in rare instances indeed a railroad's only competition is with other railroads, and if the expenses of all are equally increased by the liability, and all have the right to charge a reasonable rate which shall be based upon the expense of operation, why should any be heard to complain?

The statute in question "meets a particular necessity and all railroad corporations are, without distinction, made subject to the same lia-

bilities. . . . It is simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage-coaches and to persons and corporations using steam in manufactures." See Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161; Georgia R. Co. v. Ivey, 73 Ga. 499, 504.

The work then belonging to the extra-hazardous class, proof was not necessary that there was an extra hazard in this particular case. The theory of the coemployee exception is that the employee may protect himself against danger. Surely in the same line of employment and in the same line of work he is not required to constantly discriminate and to say to his master, "I refuse to work with this man in unloading binders, but I am willing to work with him in unloading apples. I refuse to work with him at night, but I am willing to work with him in the daytime. I refuse to work with him on a live train, but I am willing to work with him on one which is on a side track." The law can be carried to no such absurd conclusions.

Similar statutes indeed have been upheld when applied to one injured while trucking freight from a warehouse to a freight car, Orendorff v. Terminal R. Asso. 111 Mo. App. 348, 92 S. W. 148; while elevating baggage by means of an elevator from one floor to another in a railway station, Turner v. Terminal R. Asso. 132 Mo. App. 38, 111 S. W. 841; as to brakemen coupling cars, Minneapolis & St. L. R. Co. 127 U. S. 210, 32 L. ed. 109, 18 Sup. Ct. Rep. 1176; as to a mechanic injured by a steam hammer in the repair shops, Swoboda v. Union P. R. Co. 87 Neb. 200, 138 Am. St. Rep. 483, 127 N. W. 215; as to a person employed upon a construction train to carry water for the men and to gather up tools and put them in the caboose or tool car, Missouri P. R. Co. v. Haley, 25 Kan. 35; as to a section man employed by a railway company to repair its roadbed and take up old rails and put in new ones, Union P. R. Co. v. Harris, 33 Kan. 416, 6 Pac. 571; as to a person injured while loading rails on a car to be taken to other portions of the company's road, Atchison, T. & S. F. R. Co. v. Koehler, 37 Kan. 463, 15 Pac. 567.

Not only is this the holding of the majority of the state courts, but of the Supreme Court of the United States also. In the case of Chicago, K. & W. R. Co. v. Pontius, 157 U. S. 209, 39 L. ed. 675, 15 Sup. Ct. Rep. 585, that great court is clear and outspoken upon the subject,

and sustains the validity of a similar statute when applied to a bridge carpenter who was injured while engaged in loading timbers onto a car for transportation upon the railroad, the court saying that "the mere fact that the plaintiff's regular employment was a bridge carpenter does not affect the case, nor does it matter that the road was newly constructed, nor whether it was in regular operation or not. The injury happened to the plaintiff while he was engaged in labor directly connected with the operation of the road, and the statute applies."

It is not necessary for us to enter into a discussion of the general question as to whether the statute of North Dakota would be constitutional if construed according to its natural import and to cover all of the servants of a railway company no matter in what particular kind of employment or branch of the service they happened to be engaged.

It is enough to say that all of the authorities are agreed that such statutes are constitutional if construed to apply only to those employments which are strictly related to the operation of the trains of a railway company, and can fairly be said to be within the class of extra hazardous.

There can be no question that the unloading of the cars of the trains which are standing on the main track of a railway, and while such cars are in a live train or in a train from which the engine has been cut off to take water, and in order that that car may be sent out in the same or in another train a few hours later, is work which is both connected with the operation of the railroad and usually hazardous in its nature.

Provided that the work done is thus connected with the physical operation of the road and is dangerous in its nature, we know of no courts which split hairs over the precise degree of danger involved, and there is no necessity that they should.

Here we have a quasi public corporation whose rates may be regulated by statute, but which is entitled to charge reasonable rates, and rates which will not merely meet expenses, but assure a reasonable return. Here we have a corporation which is granted the extraordinary powers and privileges of eminent domain. State v. Peel Splint Coal Co. 36 W. Va. 802, 17 L.R.A. 385, 15 S. E. 1000; Knoxville Iron Co. v. Harbison, 183 U. S. 13, 46 L. ed. 55, 22 Sup. Ct. Rep. 1.

Here we have an employment where, as a general rule, the reason for the fellow-servant rule does not apply, the reason for the rule, as laid

down in the original butcher's employee case of Priestly v. Fowler, 3 Mees. & W. 1, Murph. & H. 305, 7 L. J. Exch. N. S. 42, 1 Jur. 987, 19 Eng. Rul. Cas. 102, being that each servant has, through association, the opportunity to get acquainted with the characteristics of his co-employees, and that in such a case he can well enjoin care on the part of those servants, and that, such being the case, the instinct of self-preservation will not only afford the best safeguard against injury and loss of life, but the exercise of that instinct should, on the grounds of public policy, be insisted upon by the courts.

It is a matter of common knowledge indeed that the railroad employee cannot, as a rule, choose or grow acquainted with his associates, and that men gathered from all parts of an immense system are momentarily thrown together, and that, as the trains come and go, trainmen are exposed to the risk of the negligence of laborers and section men, engineers, conductors, and other employees whom they have never seen and over whose conduct they can exercise no control whatever.

So, too, as is pointed out by the supreme court of Wisconsin in the case of Kiley v. Chicago, M. & St. P. R. Co. 138 Wis. 215, 119 N. W. 309, 120 N. W. 756, 21 Am. Neg. Rep. 394; the policy that a railroad company shall be held liable to a higher degree of care, and which has resulted in the abrogation of the fellow-servant rule as far as it is concerned, is based not merely upon a regard for the safety of its employees, but of the public as well, the safety of that public being dependent upon a thoroughly competent and efficient operating class. On account of these risks and the public nature of their calling, railroads are placed within a particular class. Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161; Chicago, K. & W. R. Co. v. Pontius, 157 U. S. 209, 39 L. ed. 675, 15 Sup. Ct. Rep. 585.

The judgment of the District Court is affirmed.