[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 222 
This is an action brought by the plaintiffs as taxpayers, suing on behalf of themselves and all others similarly situated, to enjoin the defendants from proceeding with the construction of an addition to the court house. A temporary injunction was obtained in the court below and later, upon the answer of the defendants coming in, there being no important facts at issue, the matter was presented to the trial court for determination on the pleadings or upon stipulated facts substantially in accord with the facts pleaded. A judgment was entered denying the plaintiffs' motion for judgment on the pleadings and dismissing the action. From that judgment the plaintiffs appeal. After the usual formal allegations of existence and capacity of the various parties, the complaint alleges that the county of Stutsman is and was the owner of a certain court house building; that during the early part of 1925 the defendants embarked upon a building project, contemplating large and expensive extensions and additions thereto; that they employed architects to prepare and submit plans at an expense of more than $1,200; that the architects submitted plans and specifications *Page 223 
for the construction of an addition on the west end of the court house building about 40 x 60 feet in dimensions and two stories high, to cost approximately $40,000, not including furniture and fixtures; that, as a part of the plans and specifications submitted, there was a tentative draft and plan of an entirely new court house building of which the proposed addition and extension would form a unit or part, which entire structure, were it all built, would cost at least $200,000; that the board of county commissioners accepted the plans and specifications in so far as they applied to the extension and addition, and instructed the county auditor to advertise for bids; that a short while prior to the advertising there was prepared a budget showing the current needs of the county for the ensuing year, in which there was included the sum of $11,500 for office equipment and vaults, and the further sum of $37,000 for additions and extensions to public buildings, which items were intended to cover the cost of the proposed new building or extension; that these items were included in the general levy for the year 1925, but not itemized or mentioned, which levy amounted to $81,000; that there was no other appropriation of funds for the payment of such addition or extension than in the budget; that the proposition had not been submitted to a vote and that there existed no building fund out of which the cost could be paid; that bids of various of the defendants had been accepted and that the board of county commissioners were about to enter into contracts with the successful bidders. The relief prayed for is that the defendants be permanently enjoined from attempting to construct such improvement without first submitting the proposition to a vote of the people of the county. The answer, as previously stated, takes issue upon none of the essential allegations of fact contained in the complaint; but it does, however, justify the reasonableness and public policy involved in the actions sought to be enjoined.
The only question to be considered on this appeal is the power of the county commissioners to proceed with an improvement of the kind in question, to be paid for in the manner contemplated, without first submitting the proposal to a vote of the people of the county. The question of authority is, of course, dependent upon statutes, and, unfortunately, the statutes in which the matter in hand has been dealt with are not couched in the clearest language. Indeed, some of the expressions used *Page 224 
are so poorly adapted to convey a clear meaning that misunderstanding may be expected to result. Note the statutes: First, § 2148 of the Compiled Laws for 1913, a general provision which purports to regulate the levying of taxes by various taxing bodies and the determination of the rate by the county auditor, in so far as it affects the questions involved in this case, reads:
"The county taxes shall be levied by the county commissioners at the time of their meeting in July of each year. Such taxes shall be based upon an itemized statement of the county expenses for the ensuing year and a general statement of the outstanding indebtedness of the county, which statements shall be included in the published proceedings of said board, and no greater levy of county tax shall be upon the taxable property of any county than will equal the amount of such expense, plus five per cent of such amount, together with the amount of one year's interest upon, and ten per cent of the principal sum of its outstanding indebtedness."
Section 2150 limits the levy "for ordinary county revenue, including the support of the poor," to not more than 8 mills on the dollar. In addition to this, there are limitations upon taxes for emergency and other purposes such as roads and bridges.
Section 3280 provides:
"It (the board of county commissioners) shall submit to the people of the county at any regular or special election' any question involving an extraordinary outlay of money by the county or any expenditure greater in amount than can be provided for by the annual tax, or the construction of any court house, jail or other public building by establishing a building fund to aid in the construction of the same when the board shall consider the permanent buildings of the county, aforesaid, inadequate for the needs of its business and that it is not to the best interests of the county to issue bonds to aid in such construction or for the construction of such buildings by any other procedure as is, or may be provided by law, or whether it will aid in constructing or construct any highway or bridge."
Section 3281 provides for the submission to vote of any proposed expenditure greater in amount than can be provided for by the annual tax. Section 3282 governs the mode of submission. Section 3283 provides that, when the question submitted involves the establishment *Page 225 
of a building fund for the construction of buildings, the proposition must be accompanied by a proposal to levy a tax in addition to the usual taxes and that to be valid the vote must adopt the amount of tax to be levied. Section 3284 limits the rate of tax to 3 mills on the dollar and requires that, in the case of a building fund, the rate shall be such as to raise the fund within six years. Section 3287 authorizes the creation of a building fund by the county commissioners whenever in their judgment there is an immediate need for the erection and repairing of court houses, jails or other necessary buildings, and it further provides for the transfer of unexpended balances to the building fund. Sections 3457 et seq., give authority for issuing bonds for the erection of a court house or jail, or both, where the existing buildings are inadequate or unsafe, and provide for the submission of the proposition to an election. It is clear that the board in the instant case proceeded neither under the authority to create a building fund not to issue bonds.
Section 3294 of the Compiled Laws for 1913, as amended by chapter 192 of the Session Laws of 1923, reads as follows:
"The board shall have authority under the provisions of this article to provide for the erection and repairing of court houses, jails and other necessary buildings within and for the county, and to make contracts on behalf of the county for the building and repairing of the same; but no expenditure for the purpose herein named greater than can be paid out of the annual revenue of the county for the current year shall be made unless the question of such expenditure shall have first been submitted to a vote of the qualified electors of such county and shall have been approved by a majority of the votes so cast; and the board shall determine the amount and rate of taxes to be submitted to a vote for such purpose."
The question arising on the statutes naturally divides itself into two propositions: first, the power of the county commissioners to levy a tax for the purpose in question; second, their power to proceed with the contemplated improvement without the favorable action of the electors.
The foregoing statutes, we find, have come down to us from early territorial days, being modified from time to time, both by specific amendment and by revisions of codifiers. The first comprehensive act dealing with the organization and powers of the county commissioners *Page 226 
which has come to our notice is chapter 4 of the Laws of Dakota Territory for 1868-69. Section 18 of that act granted to the commissioners the power to submit to the people of the county whether it would aid or construct any road or bridge, "or to submit to the people of the county any question involving an extraordinary outlay of money by the county. The language is quite similar to that now found in § 3280 (the principal difference being that the language in § 3280 is mandatory), but there is added in the later statute the requirement of submission to vote of any expenditure greater in amount than can be provided for by the annual tax, or the construction of any court house, jail or other public building by establishing a building fund." The commissioners were further authorized, by § 27 of chapter 4 of the Laws of Dakota for 1868-69, and empowered "to provide for the erection and repairing of court houses, jails and other necessary buildings within and for the county; . . ." and it was further provided therein: "They shall determine the amount of taxes to be levied for county purposes, according to the provisions of this chapter, and the revenue law of this territory." At that time the revenue law of the territory, being chapter 25 of the Laws of Dakota for 1868-1869, expressed the power to levy county taxes and the limitations in language quite similar to that now found in §§ 2148 and 2150 of the Compiled Laws for 1913. Section 30 of that act, for instance, provided that the rate "for ordinary county revenue, including the support of the poor," should not be more than 4 mills on the dollar. (For a similar expression, see § 2150.) There were likewise similar limitations for roads and bridges. Section 109 of the same act (Dak. Terr. Laws 1868-69, chap. 25) also provided as follows: "If the county commissioners deem any expenditure necessary, greater in amount than can be provided for by the annual tax, they shall require a vote of the county thereon, either at a general election, or one called especially for the purpose . . .," thus limiting the authority to levy in a similar manner to that which still obtains. Comp. Laws 1913, §§ 3280, 3281 and 3294.
In these acts of 1868-69 there can be no doubt that the county commissioners were authorized to erect or repair the permanent improvements referred to and that they might levy taxes for such purposes, and yet, the only authority to levy taxes, under the territorial revenue law referred to in the act, the proceeds of which might have been so *Page 227 
expended, was the authority to levy for ordinary county revenue not to exceed four mills. The commissioners were clearly not required to submit the matter to a vote unless the contemplated expenditure should exceed the annual tax (Laws 1868-69, § 109, chap. 25), there being no other mandatory provision requiring the submission of any question to a vote of the electors.
We think it clearly deducible from the provisions of chapters 4 and 25 of the Laws of Dakota for 1868-69 that county commissioners were given the power to levy taxes for the purpose of erecting and repairing court houses, jails and other necessary buildings when they could do so and keep within the limit prescribed for ordinary county revenue, and that if they contemplated an expenditure greater in amount than could be provided by the annual tax a vote was required thereon. If this be the correct construction of the original act upon which the provisions of our present political code are founded, our inquiry resolves to this: Have these acts undergone such changes as to require a different construction?
Chapter 4 of the Laws of Dakota for 1868-69 was substantially reenacted in 1875. (See Session Laws of Dakota Territory for 1875, chapter 22, §§ 18 and 27 being identical in the two acts.) In the codification of 1877 we find the first attempt to shape a political code, the codifiers using as the foundation of their work a number of miscellaneous acts passed at various sessions. Their effort was to bring these acts into an orderly arrangement and amend them into a harmonious and practical system. (See preface to the Revised Codes of Dakota Territory for 1877.)
Section 32 of chapter 21 of the Political Code of 1877 is in all substantial particulars material here identical with the present § 3280 of the Compiled Laws for 1913, as will be noted from the following:
"They [the county commissioners] shall submit to the people of the county, at any regular or special election, any question involving an extraordinary outlay of money by the county, or any expenditure greater in amount than can be provided for by the annual tax, or whether the county will construct any court house, jail or other public buildings or aid or construct any road or bridge. . . ."
Section 43 of the same chapter, in language identical with that now found in § 3294 of the Compiled Laws for 1913, expressed the power *Page 228 
of the board to provide for the erection and repairing of court houses, et cetera, and prohibited expenditures for that purpose greater than could be paid out of the annual revenue of the county for the current year without submission to a vote.
In adopting this code the legislators, while requiring the submission to a vote of any question involving an extraordinary outlay of money, or the question of whether or not the county would construct any court house, et cetera, nevertheless expressly empowered the commissioners to provide for the erection or repairing of court houses, et cetera, limiting the exercise of the power only by the requirement that no expenditure, for the purpose named, greater than could be paid out of the annual revenue of the county for a current year, should be made, unless the question of such expenditure should have first been submitted to a vote of the qualified electors of the county, and should have been approved by a majority of the votes cast. Rev. Codes 1877, § 43, chap. 21. There can be no doubt, in our opinion, that under the Code of 1877 any of the enumerated improvements could have been erected or repairs thereon made without the submission to a vote, where the contemplated expenditure was no greater than could have been paid out of the annual revenue for a current year. As we view the two sections cited, they cannot be harmoniously construed otherwise.
The only substantial change in these sections since the original codification of the Political Code in the Revised Codes of 1877, in so far as the question in hand could be affected, is an amendment to § 32 of chapter 21 of the Political Code of 1877, which adds a qualification to the requirement of the submission to a vote of the question of whether the county will construct any court house, jail or other public buildings, so that the same now reads "or the construction of any courthouse, jail or other public building by establishing a building fund to aid in theconstruction of the same." (§ 3280 of the Compiled Laws for 1913, italics indicating the added qualification.) This amendment was made in 1909 (Sess. Laws 1909, chap. 67.) As previously indicated, the action of the county commissioners in the instant case which is sought to be enjoined did not contemplate the construction of a court house "by establishing a building fund." The amendment of 1909 adds strength to the construction of the code as it previously existed to the effect that improvements of the character of those in question could be *Page 229 
made without the submission to a vote, where the contemplated expenditure would not exceed an amount that could be raised from the current tax levy. It merely added the qualification that the proposal for such an improvement by establishing a building fund should be submitted to a vote.
Another amendment of the legislation in question which, in our opinion, supports our construction will be found in chapter 192 of the Session Laws of 1923. In that act § 3294 of the Compiled Laws for 1913 was amended so as to give the county commissioners authority to provide for the purchase, erection, repairing and maintaining of county hospitals, as well as the improvements theretofore enumerated. In all other respects the section remains the same. Hence, as applied to county hospitals, the only limitation upon the exercise of the authority is that no expenditure for the purpose should be greater than could be paid out of the annual revenue of the county. With this authority and this limitation expressed in one act of the legislature, and with no reference whatever to county hospitals in § 3280 of the Compiled Laws for 1913, it would seem to be clear that an expenditure for a county hospital, to be met out of the current annual revenue, was not considered by the legislature an extraordinary outlay such as is required to be submitted to a vote within § 3280. In other words, the last legislative expression treats § 3294 as a complete expression of authority and a limitation of the same as applied to the subjects embraced, including court houses and county hospitals, and in that section there is no requirement for a vote so long as the contemplated expenditure is within the current annual revenue.
The appellants strongly argue that the contemplated outlay in the instant case is necessarily an extraordinary outlay of money such as is required to be submitted to vote by § 3280, supra. They contend that to hold otherwise is, practically, to give to the county commissioners unlimited power to carry forward works of the character of that in question, since the margin between the usual tax levy to meet the expense of county government and the limit of the levy for ordinary county revenue is wide enough to permit the raising of large amounts annually that may be devoted to such purposes. It is argued in substance that this practical result should be avoided by so defining the relative expression "extraordinary outlay" as to bring the contemplated *Page 230 
expenditure within it. It must be conceded that there is much force in this contention and were it not for the fact that the statutes in question have a long history back of them, throughout all of which the term "extraordinary outlay" seems to have been used in contradistinction to outlays that may be made from current annual revenues, we should be strongly inclined to adopt the appellants' construction. The statutes in question are old statutes, and it is elementary that they must be viewed in the light of the times in which they were enacted. 25 R.C.L. 1035, and that the court must take judicial notice of the history of the terms employed. Sutherland, Stat. Constr. § 300.
The fact that the legislation in question has been so little changed from the time of its enactment in early territorial days to the present time, is a further reason why the meaning attaching to it in the beginning should be held to continue. It cannot be assumed that the legislature has been unaware of the true meaning of an act of such long standing. The contrary must be presumed. Sutherland, Stat. Constr. § 333. Nor are we justified in attaching a new or different meaning to the governing statutes because of the fact that large increases in assessed valuation have operated to increase the margin between the rate of levy actually needed to meet the demands of the county government and the legal limit of levy to a point where more ambitious projects can be carried out by the use of the current annual revenue than was formerly possible. The whole matter is, of course, subject to legislative control, and our researches have enabled us to find no statute which limits the authority of the county commissioners with respect to the building of an addition to an existing court house or the making of repairs thereon, where the expense of the same is budgeted and is, together with the other expenses of the county, within the limit of the current annual revenue. The conclusion reached is one which, in our opinion, is required by the application of elementary rules of construction to statutes that have long existed, the legislature apparently never having deemed it necessary to restrict expenditures for the given purposes so long as the amount involved did not exceed the limit prescribed for the current annual revenue. This, as shown above, has been the law since early territorial times and it should not be changed by judicial construction. In this condition of the governing legislation, the protection *Page 231 
of the taxpayers against such contemplated expenditure is to be sought at the polls and in the legislative assembly and not in the courts.
For these reasons it follows that the judgment appealed from must be affirmed. It is so ordered.
CHRISTIANSON, Ch.J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.
 On Rehearing.