[File No. 7184]

F. W. WOOLWORTH CO., a Corporation, Appellant, v. JOHN GRAY, as Tax Commissioner of the State of North Dakota, Respondent.

(46 NW2d 295)

Opinion filed February 5, 1951

*Wattam, Vogel, Vogel & Bright,* for appellants.

*Wallace E. Warner,* Attorney General and *P. O. Sathre,* Assistant Attorney General, for respondent.

*Cupler, Tenneson & Serkland,* Amicus Curiae.

CHRISTIANSON, J. The plaintiff, a New York corporation, brought this action against the Tax Commissioner of the State

of North Dakota to recover the sum of $1486.96 which it is alleged that the defendant required the plaintiff corporation to pay as taxes exacted under the provisions of Laws 1949, Chapter 341, 1949 Supp to NDRC 1943, Chapter 57–39, commonly known as the Retail Sales Tax Act.

The plaintiff alleges in its complaint that the plaintiff is a foreign corporation organized and existing under the laws of the State of New York and duly and regularly qualified under the laws of the State of North Dakota to do business in the State and engaged in the merchandising business therein. That the defendant is the duly elected and qualified Tax Commissioner of the State of North Dakota and as such is charged by law with the duty of administering Laws 1949, Chapter 341, commonly known as the Retail Sales Tax Law. That the plaintiff is engaged in the sale of merchandise in the State of North Dakota in six different cities and has qualified under the provisions of the Retail Sales Tax Law by obtaining a permit from the defendant for each and all of such stores.

That under the terms and provisions of said Sales Tax Law, above referred to, the plaintiff, in the manner provided by law, made and returned to the Tax Commissioner, the defendant herein, for the period from July 1, 1949, up to and including the 30th day of September 1949, a true and correct report of all sales of merchandise sold at its various stores in this state during said period, and did at the same time pay to said defendant the total amount of the tax collected on individual sales where the amount involved exceeded the sum of twenty-four cents.

That under the terms and provisions of said Chapter 341, of the Session Laws of the State of North Dakota for the year 1949, no retailer is permitted to collect from the consumer a tax on individual sales of merchandise where the amount paid for such merchandise is less than twenty-five cents, and no retailer of merchandise is liable for the payment to the State of North Dakota of any tax on such individual sales of less than twenty-five cents.

That under the terms and provisions of said law plaintiff was not permitted to and did not collect from any purchaser or con-

sumer any tax on individual sales of less than twenty-five cents. That, despite the terms and provisions of said law, the plaintiff, at the time of the payment of the full amount of tax collected under and in accordance with the provisions of said law, was required by the defendant to pay the additional sum of $1486.96, being the amount claimed by the Tax Commissioner as necessary in order to equal two per cent on all gross sales within the State of North Dakota during said period including the individual sales of less than twenty-five cents.

That the payment of said $1486.96 was at said time made under written protest and solely in order to avoid prosecution by the defendant and the invoking by the defendant as against this plaintiff of the penalties in said law provided.

That under the plain and specific terms and provisions of said Chapter 341 of the Session Laws for 1949, no tax was or is due on individual sales of less than twenty-five cents, and the collection by the defendant of a tax on such sales from the retailer, or in fact the collection of a greater tax from the retailer than such retailer is lawfully permitted under said law to collect from the purchaser or consumer is invalid, illegal, unreasonable, discriminatory, contrary to the rights of the plaintiff, and wholly unlawful for the reason that the tax due and owing under said law is a tax solely and only against the consumer and not against the retailer.

That this plaintiff at each store owned and operated by it in the State of North Dakota kept an accurate and correct record of all sales tax which under said law it was permitted to and did collect and, as hereinbefore alleged, remitted to the defendant the full amount of such tax so collected.

That this plaintiff during said period was wholly unable under the so-called bracket system contained in said law, to collect or recoup any part or portion of the excess tax in the amount of $1486.96, which it was compelled by the defendant to pay and did pay under protest.

That prior to the commencement of this action the plaintiff made demand in writing upon the defendant for a return of said sum of $1486.96 so illegally and unlawfully collected from the

plaintiff by the defendant, which demand was by the defendant in all things refused.

Plaintiff prays judgment for the sum of $1486.96 with interest thereon at legal rate from the date of payment thereof together with costs and disbursements.

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The trial court made an order sustaining the demurrer and the plaintiff has appealed.

The Retail Sales Tax law was first enacted in this state in 1935 and was limited to a two-year period, — May 1, 1935, to May 1, 1937. Laws 1935, Chapter 276. In 1937 an act containing substantially the same provisions was enacted for a period beginning May 1, 1937, and ending June 30, 1939. Laws 1937, Chapter 249. Acts for similar two-year periods and containing substantially the same provisions as those contained in the law enacted in 1935 were enacted by legislative assemblies in 1939, 1941, 1943, 1945, and 1947. Laws 1939, Chapter 234; Laws 1941, Chapter 283; Laws 1943, Chapter 264; Laws 1945, Chapter 308; Laws 1947, Chapter 344.

As introduced the present Retail Sales Tax law (Laws 1949, Chapter 341) like the acts for the previous years contains substantially the same provisions as those embodied in the original enactment. In the course of passage, however, a change was made in Sec. 6 of the 1949 Act, which the plaintiff claims operates to exempt or exclude from the sales tax receipts on all sales where the purchaser paid and the plaintiff received payment of twenty-four cents or less.

The Retail Sales Tax law enacted by the Legislative Assembly of this state in 1935 was adopted from Iowa. Many of the sections were adopted without the slightest change. That is true of Sections 6 and 7 of the 1935 enactment. See, Laws of Iowa of the 45th G. A. Extraordinary Session, Chapter 82, Div IV, Sec 37 et seq; Code of Iowa 1935, Ch 329–F1, Sec 6943–F37.

Chapter 276, Laws 1935, provided:

Sec. 1 (f) " 'Gross receipts' means the total amount of the sales of retailers, valued in money, whether received in money

or otherwise, provided, however, that discounts for any purposes allowed and taken on sales shall not be included, nor shall the sale price of property returned by customers when the full sale price thereof is refunded either in cash or by credit. . . . ."

Sec. 2. "There is hereby imposed, beginning the first day of May, 1935, and ending May 1, 1937, a tax of two per cent (2%) upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the State of North Dakota to consumers or users; . . .

"The tax herein levied shall be computed and collected as hereinafter provided."

Sec. 3. Exemptions. This section exempted from the provisions of the act and from the computation of the amount of tax imposed by it gross receipts from certain described sales such as the gross receipts from sales of tangible personal property which the State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of the State.

Sec. 4. This section provided that taxes paid on gross receipts represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon subsequent payment of the tax and that if such accounts are thereafter collected by the retailer a tax shall be paid upon the amount so collected and that the provisions of the act shall not apply to the sales of gasoline, cigarettes, etc. or any other product, business or occupation upon which the State of North Dakota now or may hereafter impose a special tax, either in the form of a license tax, stamp tax or otherwise.

Sec. 5. Provided that a relief agency may apply to the commissioner and receive a refund for taxes paid upon sales to it of goods, wares or merchandise used for free distribution to the poor and needy.

Sec. 6 reads as follows:

"Retailers shall, as far as practicable, add the tax imposed under this act, or the average equivalent thereof, to the sales price or charge and when added such tax shall constitute a part

of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts.

"Agreements between competing retailers, or the adoption of appropriate rules and regulations by organizations or associations of retailers to provide uniform methods for adding such tax or the average equivalent thereof, and which do not involve price fixing agreements otherwise unlawful, and which shall first have the approval of the Commissioner, are expressly authorized and shall be held not to be in violation of any antitrust laws of this state."

Sec. 7 reads as follows:

"It shall be unlawful for any retailer to advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this division will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded."

Sec. 8. "It shall be the duty of every retailer required to make a report and pay any tax under this division, to preserve such records of the gross proceeds of sales as the Commissioner may require and it shall be the duty of every retailer to preserve for a period of two years all invoices and other records of goods, wares, or merchandise purchased for resale; and all such books, invoices and other records shall be open to examination at any time by the Commissioner or any one of his duly authorized agents."

Sec. 9. "The retailer shall, on or before the 20th day of the month following the close of the first quarterly period as defined in the following section, and on or before the 20th day of the month following each subsequent quarterly period of three months, make out a return for the preceding quarterly period in such form and manner as may be prescribed by the Commissioner, showing the gross receipts of the retailer, the amount of the tax for the period covered by such return, and such further information as the Commissioner may require to enable him correctly to compute and collect the tax herein levied; . . . ."

Sec. 11. "Thirty days after the effective date of this act, it shall be unlawful for any person to engage in or transact business as a retailer within this state, unless a permit or permits shall have been issued to him as hereinafter prescribed. Every person desiring to engage in or conduct business as a retailer within this state shall file with the Commissioner an application for a permit or permits. Every application for such a permit shall be made upon a form prescribed by the Commissioner and shall set forth the name under which the applicant transacts or intends to transact business, the location of his place or places of business, and such other information as the Commissioner may require. . . ."

Sec. 16. "The Tax Commissioner of the State of North Dakota is hereby charged with the administration of this act and the taxes imposed thereby. Such Commissioner shall have the power and authority to prescribe all rules and regulations not inconsistent with the provisions of this act, necessary and advisable for its detailed administration and to effectuate its purposes, including the right to provide for the issuance and sale by the state of coupons covering the amount of tax or taxes to be paid under this act, if such method is deemed advisable by said Commissioner."

According to its terms the North Dakota Retail Sales Tax Act became operative and taxes were imposed thereunder beginning the first day of May, 1935. On March 19, 1935, a meeting of the North Dakota Retail Merchants Association was called and held at the State Capitol in which a large number of merchants from various parts of the State participated. The meeting was held to consider methods for the collection of the retail sales tax. The then Commissioner Weeks addressed the meeting and expressed his preference for the Iowa system of collection. Sections 6 and 7 of the North Dakota Retail Sales Tax Act had been adopted bodily from the Iowa law. He discussed the schedule that had been adopted for the collection of retail sales taxes in Iowa which was identical with the one that later was recommended by the merchants and approved by the Commissioner. He also discussed the coupon and token systems for use in the

collection of the tax and stated that they were clumsy and expensive. He stressed the view that any system adopted should be fair to the customer and that the merchants should strive to collect the two per cent tax but "no less and no more." Thereafter the Tax Commissioner adopted a rule reciting that the retail merchants "with the approval of the Tax Commissioner, adopted the following bracket system for the application of the tax:

| | |
|---|---|
| "$0.01 to $ 0.14 | No tax |
| $ .15 to $ .65 | 1¢ tax |
| $ .66 to $ 1.24 | 2¢ tax |
| $1.25 to $ 1.74 | 3¢ tax |
| $1.75 to $ 2.24 | 4¢ tax |
| $2.25 to $ 2.74 | 5¢ tax |
| $2.75 to $ 3.24 | 6¢ tax |
| $3.25 to $ 3.74 | 7¢ tax |
| $3.75 to $ 4.24 | 8¢ tax |
| $4.25 to $ 4.74 | 9¢ tax |
| $4.75 to $ 5.24 | 10¢ tax |
| $5.25 to $ 5.74 | 11¢ tax |
| $5.75 to $ 6.24 | 12¢ tax |
| $6.25 to $ 6.74 | 13¢ tax |
| $6.75 to $ 7.24 | 14¢ tax |
| $7.25 to $ 7.74 | 15¢ tax |
| $7.75 to $ 8.24 | 16¢ tax |
| $8.25 to $ 8.74 | 17¢ tax |
| $8.75 to $ 9.24 | 18¢ tax |
| $9.25 to $ 9.74 | 19¢ tax |
| $9.75 to $10.24 | 20¢ tax |
| Each 50¢ | 1¢ additional tax |

Collect the tax on ALL sales totaling 15¢ or more."

See Rule 2, North Dakota Sales and Use Tax Rules and Regulations, issued July 1, 1947.

Such schedule or bracket for the application of the tax, and the rule of the Tax Commissioner embodying the same were continued in force without change under the several enactments from 1935 up to and including the law enacted in 1947. Section 6 of the 1935 enactment was reenacted without change as a part of the several retail sales tax acts enacted during that time up to and including 1947. When the present retail sales tax act was introduced in the Legislative Assembly in January 1949 said Section 6 as it had appeared in the enactment of 1935 and succeeding laws was embodied in the bill and read as follows:

"Retailers shall add the tax imposed under this Act, or the average equivalent thereof, to the sales price or charge and when added such taxes shall constitute a part of such price or charge, shall be a debt from the consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debt.

"Agreements between competing retailers, or the adoption of appropriate rules and regulations by organizations or associations of retailers to provide uniform methods for adding such tax or the average equivalent thereof, and which do not involve price fixing agreements otherwise unlawful, and which shall first have the approval of the commissioner, are expressly authorized and shall be held not to be in violation of any anti-trust laws of this state."

The Journals of the House of Representatives and of the Senate disclose that disagreement arose with respect to the bracket or schedule that had been adopted and applied during the previous years on sales which fell within the lower brackets, and the bill as passed by the House of Representatives eliminated the second paragraph of Section 6 and inserted in lieu thereof a bracket or schedule for the application of the tax

wherein the first two lines in such bracket or schedule read as follows:

"$0.01 to $0.34        No tax

   .35 to   .65        1¢ tax" House Journal, 670.

No changes were made in the bracket or schedule so far as taxes on sales exceeding 66 cents were concerned. The bill as so amended was passed by the House of Representatives on February 17, 1949, with 89 votes in the affirmative, 19 votes in the negative and 5 absent and not voting. House Journal, 692–693. The bill was transmitted to the Senate on February 17, 1949. House Journal, 706.

The Senate amended the bill by striking out the provision that had been added to the second paragraph of Section 6 in the course of passage in the House of Representatives and inserting in lieu thereof the language that had been stricken from the bill as introduced. Senate Journal 629, 652. The bill as so amended by the Senate was passed by the Senate on March 1, 1949, there being 40 votes in the affirmative, 8 votes in the negative, and 1 absent and not voting. Senate Journal 700. The bill as passed by the Senate was returned to the House of Representatives on March 2, 1949, Senate Journal 715, House Journal 1023. The House of Representatives refused to concur in the Senate amendments and conference committees were appointed by the House of Representatives and by the Senate. House Journal 1057, Senate Journal 742. The conference committees recommended that the controversial portion of Section 6 be stricken out and that in lieu thereof the following be inserted:

"In adding such tax to the price or charge, retailers shall adopt the following bracket system for the application of the tax:

| | | | |
|---|---|---|---|
| $0.01 | to | $ 0.24 | No tax |
| .25 | to | .74 | 1¢ tax |
| .75 | to | 1.24 | 2¢ tax |
| 1.25 | to | 1.74 | 3¢ tax |
| 1.75 | to | 2.24 | 4¢ tax |
| 2.25 | to | 2.74 | 5¢ tax |
| 2.75 | to | 3.24 | 6¢ tax |
| 3.25 | to | 3.74 | 7¢ tax |
| 3.75 | to | 4.24 | 8¢ tax |
| 4.25 | to | 4.74 | 9¢ tax |
| 4.75 | to | 5.24 | 10¢ tax |
| 5.25 | to | 5.74 | 11¢ tax |
| 5.75 | to | 6.24 | 12¢ tax |
| 6.25 | to | 6.74 | 13¢ tax |
| 6.75 | to | 7.24 | 14¢ tax |
| 7.25 | to | 7.74 | 15¢ tax |
| 7.75 | to | 8.24 | 16¢ tax |
| 8.25 | to | 8.74 | 17¢ tax |
| 8.75 | to | 9.24 | 18¢ tax |
| 9.25 | to | 9.74 | 19¢ tax |
| 9.75 | to | 10.24 | 20¢ tax |

Each additional 50¢          1¢ additional tax"

House Journal 1139–1140, Senate Journal 773–774.

The report of the conference committees was adopted, and on March 4, 1949, the bill as amended pursuant to the reports of the conference committees was duly passed by the House of Representatives with 78 affirmative votes and 19 negative votes and 16 absent and not voting, House Journal 1140–1141, and by the Senate with 42 affirmative votes and 6 negative votes and 1 absent and not voting. Senate Journal 774.

Plaintiff contends that the change made in Section 6 of the Retail Sales Tax Act, Laws 1949, Chapter 341, by striking out the second paragraph of the section as introduced and inserting in lieu thereof the following:

"In adding such tax to the price or charge retailers shall adopt the following bracket system for the application of the tax:

| | | |
|---|---|---|
| $0.01 to $0.24 | | No tax |
| .25 to .74 | | 1¢ tax |
| .75 to 1.24 | | 2¢ tax" |

operated to except and exclude from the operation of the Act and exempt all sales and the gross receipts from all sales for 24 cents and less from any tax under said act. In short, it is contended that the item in the bracket "$0.01 to $0.24—No tax" evidences a legislative intention that such sales and all gross receipts from such sales shall be excluded and exempted from the operation of the act and from the tax imposed thereunder. It is further contended that the sales tax is a tax specifically imposed and laid upon the consumer or purchaser and that if sales for less than 25 cents and the gross proceeds thereof are subject to the sales tax and enforced against the retailer then the law is arbitrary, discriminatory, confiscatory and violative of the due process clause of the Constitution of the United States and Sections 11 and 20 of the Constitution of North Dakota.

The first question presented is one of legislative intention. Did the legislature intend by the language employed in Section 6 to provide that sales and gross receipts from sales for less than 25 cents should be exempt from the sales tax? We think not.

As has been noted, during the entire period that the Retail Sales Tax laws of this state had been in operation since May 1, 1935, up to the enactment of the Retail Sales Tax Act of 1949 the application and computation of the tax had been controlled by a bracket system which provided that no tax should be added to the sales price and collected from the purchaser on any item for which a purchase price of 14 cents or less was paid. But during this entire period a two per cent retail sales tax was imposed upon the gross receipts from all sales including sales for 14 cents or less. Every tax commissioner had so construed and enforced the law, and such construction had never been challenged in the courts. As has been said Section 6 as it appeared in the Retail Sales Tax Act of 1935 and in the acts enacted by subsequent legislatures and the schedule or bracket which had

been put in force under the 1935 act was continued in force under the subsequent acts. Under the 1949 Act as introduced it would have been necessary to adopt some system or plan for the application of the tax to sales where the purchase price was so small that two per cent thereof would be only a fractional part of a cent and it seems likely that the same bracket system as has prevailed under former acts would have been adopted. The Journals of the House of Representatives and of the Senate disclose that there was some dissatisfaction with, or at least desire to change, the former bracket whereby a tax of one cent might be added to and included in a purchase price or charge on a sale for 15¢ to 65¢ and that a change was proposed and made in Section 6 for the purpose of changing the former system by inserting in the section a schedule or bracket and also to change the bracket which formerly had been utilized so as to provide that the retail sales tax should not be added to and made a part of the sales price or charge where the amount of the charge or purchase price was 24¢ or less. The Senate, however, apparently desired to retain the system that had been in effect under the former laws and amended the bill so as to strike out the provision that had been inserted in Section 6 by the House of Representatives and inserted in lieu thereof the provision which was in the bill when it was introduced and which had been part of the former Retail Sales Tax laws. The controversy between the two houses was referred to a conference committee and such committee recommended that a schedule or bracket be inserted in the bill, in which a change was made in the lower brackets from what originally had been proposed by the House.

It will be noted that many sections of the Retail Sales Tax Act dealt with one specific subject. Thus, Section 2 prescribed the amount of the tax and on what the tax shall be imposed. Section 3 specified the exemptions from the tax. Section 4 dealt with the allowance of credit upon subsequent payments of the tax for taxes that had been paid on gross receipts represented by accounts found to be worthless, and also provided that the act should not apply to sales of gasoline, cigarettes, etc., or any other product, business or occupation on which the State of

North Dakota then or might thereafter impose a special tax. Section 5 provided that a relief agency might apply to the commissioner and receive a refund for taxes paid upon sales to it for goods used for free distribution to the poor and needy. Section 6 provided that the amount of the tax that might be imposed upon gross receipts resulting from a sale should be added *"to the sales price or charge, and when added such tax shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts."* The second paragraph of Section 6 related to methods to be employed for the application and the adding of such tax to the sales price or charge for the property purchased. It was under this provision that the schedule or bracket had been adopted under the former laws and which provided that on sales where the purchase price amounted to 14 cents or less that no tax should be collected and that on sales where purchase price amounted to from 15 cents to 65 cents a one-cent tax be added to and included in the sales price or charge. It was this paragraph, under which such schedule or bracket had been adopted, that the legislature struck out and in lieu of which it inserted a schedule or bracket fixing the rate which might be added to the sales price or charge on sales where the tax computed at the rate of two per cent would result either wholly or in part in fractional parts of a cent.

It seems clear that the only change the legislature intended to make in the law by the change that was made in Section 6 was in the first three items and especially in the first item in the schedule or bracket to be applied in the computation and collection of the tax. The remaining items in the schedule or bracket were left precisely as they had been in the bracket that was adopted in 1935 and had been continued in force in succeeding years. It is true the legislature made a further change and instead of leaving the schedule or bracket for consideration of organizations and associations of retailers and the approval of the tax commissioner the lawmakers themselves formulated and agreed upon the bracket to be applied in the collection of the tax and included the same in the law. This was doubtless

done to insure that the schedule which the legislature had determined to be proper should be applied in the computation and collection of the sales tax. There clearly was no intention on the part of the legislature that the gross proceeds from sales of less than 25 cents should be exempted from the retail sales tax. Section 2 of the act provided "there is hereby imposed, beginning the first day of July, 1949 and ending the 30th day of June, 1951 a tax of two percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this act, sold at retail in the state of North Dakota to consumers or users." Section 3 specified the exemptions; Section 4 provided that taxes paid on gross receipts represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon subsequent payments of the tax; and Section 5 provided that a relief agency might apply for and receive a refund of the amount of tax imposed under the act and paid upon it for goods used for free distribution to the poor and needy. The clause "except as otherwise provided in this Act" was the same as had been included in every act from 1935 and had reference to the specific provisions in the law for exemptions and deductions.

A somewhat perplexing situation arises where a retail sales tax is imposed on all sales of personal property and where the sales price is so small that the tax on the sale or on the gross proceeds will amount to only a fraction of a cent for, of course, there is no unit of legal tender that may be employed for paying the tax without overpaying it. To obviate this difficulty various methods of paying the tax have been devised. In some instances tokens or coupons have been adopted, in others a schedule or bracket system such as has been in force in this state has been adopted. If there were no schedule or bracket in this state or other plan to make possible the collection of a sales tax amounting to only a fraction of a cent it is apparent annoying and embarrassing situations might arise. Thus, if there were no schedule or other plan in the State for the collection of a sales tax amounting to only a fraction of a cent and the law otherwise re-

mained as it is, and if the purchaser purchased an article for which the sales price was 24¢ the sales tax would amount to less than half of a cent, namely, .48 of a cent. Under the law the vendor could say, "you owe me 24¢ for the article to which I have added .48 of one cent, the amount of the sales tax, which is part of the purchase price. So you owe me 24 48/100 cents." The vendee could reply, "True, but how am I to pay you the .48 of a cent?" If the seller avails himself of the remedy that the statute provides to collect the amount of the tax from the purchaser and adds the amount of such tax as a part of the sales price or charge and brings action to recover 24¢ and .48 of a cent, judgment would not be rendered for the .48 of a cent, and he would find it to be impossible or impracticable to collect such minor fraction of a cent. It is a maxim of our jurisprudence that "the law never requires impossibilities." NDRC 1943, 31-1105 (22).

The question of computation of a sales tax where the application of the tax rate to individual transactions would result in a fraction of a cent was considered by the Supreme Court of Utah in W. F. Jensen Candy Co. v. State Tax Commission, 90 Utah 359, 61 P2d 629, 107 ALR 261. The statute involved in that case provided for a tax of two per cent on every retail sale which tax the vendor might, if he saw fit, collect from the vendee but prohibited him from collecting as a tax an amount (without regard to fractional parts of 1 cent) in excess of the tax computed at the rates prescribed. It was contended that the statute exempted from the tax all sales involving fractional parts of 50 cents. The court rejected this contention and held that the tax should be paid on every sale alike, no exception being provided by the statute of sales where the gross amount was less than 50 cents, or of sales involving more than 50 cents where the consideration was not expressed in even units of 50 cents or in dollars. Referring to the difficulty encountered in collecting from the vendee a tax of a fractional part of 1 cent the court said, "The people apparently had adopted the common sense solution of the vendor absorbing the minor fraction of 1 cent and the vendee paying when the sales tax upon the rate im-

posed passed to the major part of a fraction of a cent." It will be noted that the item of which the plaintiff complains, namely the first item in the schedule, provides that in application of the tax no tax shall be collected on sales of 24 cents or less. Taxes on sales for 24 cents at two per cent would amount to only .48 of a cent, that is, to a minor fraction of a cent and sales for 24 cents or less are the only sales to which the provision in the schedule that no tax shall be collected applies. On the other hand on all sales where the tax amounts to the major part of a cent, a tax of 1 cent is permitted to be collected. Thus in sales for 25 cents there is allowed to be collected a four per cent tax.

It is probable that no system has been devised that will make it possible to pay the exact amount of a one or two percent sales tax on all sales. In order to do so it would be necessary to utilize some token or coupon or other means of that character in denominations as low as one hundredths of a cent. The result would be an expensive and cumbersome process. Even where tokens are used it seems that the minimum denomination is one mill. It has been recognized that in dealing with this problem the lawmakers may adopt some practical means or system to facilitate the computation and collection of the tax and that the purpose is not defeated merely because the system adopted does not permit a tax for a minor fraction of a cent to be imposed and collected upon a particular sale. Thus in Morrow v. Henneford, 182 Wash 625, 47 P2d 1016, a system had been established to supplement the Retail Sales Tax Act whereby for a purchase of five cents the purchaser was required to pay a 1/5 cent token which resulted in imposing a tax of four percent instead of two percent as the Retail Sales Tax Act provided. (This is precisely what happens under the schedule or bracket for the application of the tax in the present Retail Sales Tax Act of North Dakota on purchases of 25¢.) The claim was made that the action of the commission was an attempt to force the purchaser to pay a tax in excess of two percent prescribed by the statute. In upholding the use of tokens the court said:

"The schedule issued by the tax commission is for convenience

in computing the tax. While it is true that upon a 5-cent purchase a 1/5 cent token is paid, its use arises out of the necessity of the case."

"In 110 ALR 1488, 1489, it is said:

"Where the statute does not exempt sales on which the tax would be less than 1 cent, and as a result the seller finds it impossible or impracticable to collect the tax from the purchaser, the question arises as to whether the tax lacks such uniformity as to violate constitutional requirements of equality under the laws of uniformity of taxation. In stores in which the sales are normally for 5 or 10 cents, this becomes a serious problem under the usual tax rate of 1 or 2 per cent, because the tax is so small that there is no legal tender with which the purchaser can pay it, and he rightly refuses to pay a full cent as tax, since that sum may by comparison greatly exceed the actual tax. Yet if the seller bears the burden of the tax on all these transactions, his loss mounts steadily with the volume of such sales. The courts, however, have uniformly sustained the sales tax notwithstanding this objection, saying that by 'breakdown' schedules or other means the seller can pass the tax on to the consumer. Roth Drugs v. Johnson, 1936, 13 Cal App2d 720, 37 P2d 1022; W. F. Jensen Candy Co. v. State Tax Commission, 1936, 90 Utah 359, 61 P2d 629, 107 ALR 261; State Tax Commission v. Logan, 1936, 88 Utah 406, 54 P2d 1197."

Plaintiff's next contention is that the sales tax "and the whole thereof is clearly and unmistakably by Section 2 of the act imposed upon the consumer;" and that if it is held that individual sales of less than 25¢ "are not excepted" and "entirely eliminated" from the sales tax then the plaintiff is, in effect, compelled "to pay under compulsion a tax specifically laid upon the consumer and which plaintiff is wholly unable to collect or in any manner recoup" and that consequently such "portion of the law is arbitrary, discriminatory, confiscatory and violative" of the due process clause of the Constitution of the United States and Section 11 and Section 20 of the Constitution of the State of North Dakota. It is true the Retail Sales Tax Act contemplates that the burden of the tax shall be laid upon the purchaser but

it does not impose the tax upon the purchaser or create a legal obligation on his part to pay the tax to the State. The act provides that the retailer shall add to the purchase price on each sale an amount equal to the sales tax which he will be required to pay upon the gross receipts but the tax is not assessed against the purchaser. The act (Section 6) provides that "retailers shall add the tax or the average equivalent thereof to the sales price or charge, and when added such tax shall constitute a part of such price or charge, shall be a debt from the consumer or user to the retailer until paid, and shall be recoverable at law in the same manner as other debt."

While the act contemplates that the burden of the tax shall be imposed upon the purchaser, the obligation to pay the tax is laid upon the seller, not upon the purchaser. See, In Re Atlas Television Co., 273 NY 51, 6 NE2d 94. The obligation of the purchaser is to the retailer who has made the sale, and added the tax to the sales price or charge, in which case the tax so added becomes a part of the sales price or charge, and a debt from the consumer or user to the retailer and recoverable at law as such in the same manner as other debts. Retail Sales Tax Act, Sec 6.

The act provides:

"There is hereby imposed, beginning the first day of July, 1949 and ending the 30th day of June, 1951, a tax of two percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this act, sold at retail in the state of North Dakota to consumers or users; . . . ." Sec 2.

"On or before the twentieth day of the month following the close of the first quarterly period as defined in the following section, and on or before the twentieth day of the month following each subsequent quarterly period of three months, the retailer shall make out a return for the preceding quarterly period in such form and manner as may be prescribed by the commissioner, showing the gross receipts of the retailer, the amount of the tax for the period covered by such return, and such further information as the commissioner may require to enable him

correctly to compute and collect the tax herein levied. . . . ."
Sec 9.

The act further provides:

"Whenever any taxpayer liable to pay a tax or penalty imposed refuses or neglects to pay the same, the amount, including any interest, penalty, or addition to such tax, together with the costs that may accrue in addition thereto, shall be a lien in favor of the state of North Dakota upon all property and rights to property, whether real or personal, belonging to said taxpayer.

"The lien aforesaid shall attach at the time the tax becomes due and payable and shall continue until the liability for such amount is satisfied.

"In order to preserve the aforesaid lien against subsequent mortgages, purchasers, or judgment creditors, for value and without notice of the lien, on any property situated in a county, the tax commissioner shall file with the register of deeds of the county in which said property is located, a notice of said lien.

"The register of deeds of each county shall prepare and keep in his office a book known as 'Index of Tax Liens,' so ruled as to show in appropriate columns the following data, under the names of taxpayers, arranged alphabetically:

1. The name of the taxpayer;
2. The name 'State of North Dakota' as claimant;
3. Time notice of lien was received;
4. Date of notice;
5. Amount of lien then due; and
6. When satisfied . . .

"The attorney general, upon the request of the tax commissioner, shall bring an action at law or in equity, as the facts may justify, without bond to enforce payment of any taxes and any penalties, and in such action he shall have the assistance of the state's attorney of the county in which the action is pending. . . ." Sec 11.

"An appeal may be taken by the taxpayer to the district court of the county in which he resides, or in which his principal place of business is located, within sixty days after he shall have re-

ceived notice from the commissioner of his determination as provided for in the preceding section;

"The appeal shall be taken by a written notice to the commissioner and served as an original notice. When said notice is so served it shall be filed with the return thereon in the office of the clerk of said district court, and docketed as other cases, with the taxpayer as plaintiff and the commissioner as defendant. . . ." Sec 14.

These provisions of the Retail Sales Tax Act provide for enforcement of the tax against the retailer. No provision is made for the enforcement by the State of the retail sales tax against the purchaser. The obligation of the purchaser for a sales tax upon the sale is not to the State but to the retailer and under the statute the obligation comes into being when the amount of the tax is added to the purchase price or charge and thereby becomes a debt by the purchaser to the retailer and is enforceable as such. While the retail sales tax is an obligation of the retailer it is nevertheless true that where the retailer includes the amount of the tax as a part of the purchase price and collects the same from the purchaser as a part of the purchase price at the time the sale is made, as the statute contemplates should be done, it is apparent that although the tax is not an obligation of the purchaser the burden of the tax is in a very real sense laid upon or imposed upon the purchaser at the moment the transaction is completed and hence it is not strange that it has been said that the tax is imposed upon the purchaser, because the incidence of the tax is placed upon the purchaser at the time the sale is made and the retailer is at once imbursed for the retail sales tax which he subsequently must pay.

Plaintiff contends, however, that this court has held that the retail sales tax is a tax upon the consumer only and not upon the retailer. In support of this contention he cites: Jewel Tea Co. v. Tax Commissioner, 70 ND 229, 293 NW 386; Voss v. Gray, 70 ND 727, 298 NW 1; Federal Land Bank v. Bismarck Lumber Co., 70 ND 607, 297 NW 42; Standard Oil Co. v. State Tax Commissioner, 71 ND 146, 299 NW 447.

It is true that in discussing the retail sales tax in some of these decisions it has been said that the burden of the tax is laid upon the purchaser also that the tax is imposed upon the purchaser; and as has been pointed out where the retail sales tax is added to the purchase price and collected by the retailer at the time and as a part of the sales transaction and thus the incidence of the tax is placed immediately upon the purchaser as is true in millions of transactions each year, it may well be said that the tax is imposed upon the purchaser even though the duty of payment of the tax is laid upon the seller and not upon the purchaser and the liability of the purchaser is a debt to the retailer and not a liability for a tax to the State. In re Atlas Television Co., supra. However, there is no holding in any of the cases cited that the retail sales tax is a tax upon the consumer only and the judgments rendered in two of the cases enforced the tax against the retailer.

The decisions of this court cited by the plaintiff do not hold that a retail sales tax is a tax upon the purchaser only or that such tax is an obligation enforceable against the purchaser at all. Indeed, such question was not involved or presented or decided in any of the cases.

In Jewel Tea Company v. Tax Commissioner, supra, the retailer failed to collect a sales tax from any of the purchasers and consequently could not add such tax to the sales price or charge. The Tax Commissioner, however, assessed sales taxes against the Jewel Tea Company aggregating $5105.42 together with certain statutory penalties. The Jewel Tea Company applied for a hearing before the commissioner as provided by the Retail Sales Tax Act then in force. Laws 1937, Chapter 249, Sec 12; (Laws 1949, Chapter 341, Sec 13). The commissioner after hearing decided that "the plaintiff is liable for this tax with penalty." Whereupon the plaintiff appealed to the district court from the order of the commissioner and judgment was rendered by the district court against the Jewel Tea Company for the sum of $5105.42 for the retail sales taxes and in addition for certain statutory penalties. It is true that in the decision in that case reference is made to the tax as imposed upon the con-

sumer but reference is further made to the provision in the statute that "retailers shall . . . add the tax imposed under this act, or the average equivalent thereof, to the sales price or charge and when added such tax shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts." The decision and judgment in the Jewel Tea Co. case enforced the liability for the tax and the obligation to make payment thereof against the retailer. No question was presented in the case with respect to whether the tax was one against the retailer or against the purchaser. The only question presented relating to the liability of the plaintiff for the tax was the contention that the business transacted between plaintiff and the State was interstate commerce; that the retail sales tax sought to be imposed was a tax on interstate commerce, and that consequently the transaction was exempted from the provisions of the Retail Sales Tax Act under Section 3 of the act which provides:

"There are hereby specifically exempted from the provisions of this Act and from computation of the amount of tax imposed by it, the following:

"(a) The gross receipts from sales of tangible personal property which this State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State."

In Voss v. Gray, supra, the Tax Commissioner ruled that photographs made by Voss for patrons who sat for photographs to be made on their order constituted a sale of tangible personal property within the meaning of the Retail Sales Tax Act. The commissioner made an assessment against Voss in the sum of some $496.11. Voss protested and demanded a hearing. Such hearing was had. The commissioner denied the protest and affirmed the assessment. Thereupon Voss took an appeal to the district court pursuant to the Laws of 1937, Chapter 249, Section 13 (Laws 1949, Chapter 341, Section 14) which provides that "an appeal may be taken by the *taxpayer* to the District Court of the county in which he resides" from the decision of the Com-

missioner. The district court sustained the contentions of the plaintiff, Voss. The Tax Commissioner appealed. This court reversed the judgment of the trial court and held that the plaintiff Voss was subject to the tax.

In Federal Land Bank v. Bismarck Lumber Co., supra, the Lumber Company sold certain building material to the Federal Land Bank to be used in repairing buildings upon lands that had been acquired by the Federal Land Bank. The Lumber Company added the amount of the retail sales tax to the sale price as prescribed by Section 6 of the act. The Federal Land Bank refused to pay the amount of the tax added on the ground that under the laws of the United States and under Section 3 of the Retail Sales Tax Act the gross receipts from the sale of such property to the Federal Land Bank was exempt from the retail sales tax. The trial court sustained the contention of the Lumber Company and rendered judgment against the Federal Land Bank for the amount of the tax which had been so added to the sale price. The Federal Land Bank appealed and this court affirmed the judgment. The sole questions presented and involved in that case were, first, whether the sale to the Federal Land Bank and the gross receipts of such sales were exempt from the retail sales tax and, second, whether Congress could constitutionally immunize from State taxation activities of the Federal Land Bank such as the purchase of material for repair of buildings on lands acquired by the bank in carrying on its business in furtherance of the lending functions of the bank. The Federal Land Bank brought the controversy before the Supreme Court of the United States on writ of certiorari. Federal Land Bank v. Bismarck Lumber Co. et al, 314 US 95, 86 L ed 65. In its opinion in the case the Supreme Court of the United States said:

"We are confronted with two questions: First—Does #26 (The Federal Farm Loan Act) include within its ban a state sales tax such as this? We hold that it does. Second: Can Congress constitutionally immunize from state taxation activities in furtherance of the lending functions of federal land banks?"

In Standard Oil Co. v. State Tax Commissioner, supra, the

Tax Commissioner contended that the Federal excise taxes on sales of gasoline that had been paid by the purchaser to the seller for payment by the latter to the Federal Government constituted a part of the gross receipts of sales within the purview of the Retail Sales Tax law. This court held that the amount of the excise tax so paid to the Federal Government did not constitute a part of the sales price or gross receipts received by the seller.

It will be noted that in none of the cases cited was the question involved whether the retail sales tax was imposed upon the seller or upon the purchaser and anything that might have been said in the course of any of the opinions having any reference to this would not constitute authority under the doctrine of stare decisis or precedents.

Corpus Juris Secundum says:

"The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court." 21 CJS p 380.

"It is well settled that a judicial opinion must be construed with reference to the facts on which it is based, the language used must be held as referring to the particular case, and read in the light of the circumstances under which it is used, and of the issues or questions presented." 21 CJS 409–412.

"A judicial opinion is authority only for what is actually decided." Rolfe, Admrx. v. Hewitt, 227 NY 486, 125 NE 804.

"Nothing can be 'stare decisis' which was not actually considered and determined." In re Brolasky's Estate, 309 Pa 30, 153 A 739.

"Language of an opinion must be confined to the facts before the court, and no opinion is an authority beyond the point actually decided." Dougherty v. Equitable Life Assur. Soc. of U. S., 266 NY 71, 193 NE 897.

" 'It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.' Cohens v. Virginia, 6 Wheat 264, 399, 5 L ed 257,

290. 'It is a general rule,' said Chief Justice Marshall (Ogden v. Saunders, 12 Wheat 333, 6 L ed 647) . . . 'that the positive authority of a decision is co-extensive only with the facts on which it is made.'" Federal Farm Mortgage Corp. v. Falk, 67 ND 155, 270 NW 885.

"The maxim 'stare decisis' does not contemplate whatever a court may happen to say in a discursive argument of a cause, or even several causes, but has regard only to points and adjudications actually involved as essential elements in the questions in actual controversy." Ingham v. Harper & Son, 71 Wash 286, 128 P 675.

Isolated expressions in a former opinion cannot be permitted to override the express language of the act being construed. In re Frick's Estate, 277 Pa 242, 121 A 35.

Isolated expressions in an opinion are not to be employed to expand the opinion into holding more than its plain import or interpreted as deciding questions not essential to the determination of the issues before the court. People ex rel. Yohnka v. Kennedy, 367 Ill 236, 10 NE2d 806.

As has been noted a bracket system for the application of the sales tax was adopted in 1935 which recited "$0.01 to $0.14— No tax." This bracket remained in force without change for more than fourteen years until the 1949 Retail Sales Tax Act took effect. During all this time such bracket was construed by the Tax Commissioner as applicable only to sales and that the term "No tax" meant that on sales of 14 cents or less the retailer should not add two per cent of the sales price to the purchase price. At no time was it construed as exempting sales of 14 cents and less from the tax prescribed by section 2 of the act. In short, during all such time the Retail Sales Tax was measured by two per cent of the gross receipts of sales of tangible property as specified in section 2 of the act while the provision in the bracket system adopted under section 6 stating that sales in which the sales price was $0.01 to $0.14 was construed as meaning that the purchaser should not be required to pay to the retailer two per cent of the sales price as part of such price. It is apparent from what transpired during the

course of the passage of the 1949 Retail Sales Tax Act that some of the legislators were of the mind that it was unfair that on a sale where the sales price was 15 cents the purchaser should be required to have added to the purchase price 1 cent as this would amount to an addition of more than six per cent of the sales price, whereas the retailer would be required to pay only two per cent on the gross receipts. It seems clear that the legislative intention was merely to insert a new bracket system as a part of the law and increase the amount of the sales price to which the tax might not be added by the retailer from 14 cents to 24 cents and that otherwise the law would remain as it had been in operation and applied during the previous years.

The plaintiff contends, however, that if the statute is construed as requiring the retailer to pay a tax of two per cent on gross receipts from all sales including receipts from sales of 24 cents and less on which the retailer is not permitted to collect two per cent of the sales price and add the same to the purchase price at the time of the sale, the statute is violative of Section 11 of the Constitution of this state which provides, "All laws of a general nature shall have a uniform operation;" and of Section 20 of the State Constitution which provides, "Nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens;" and of the Fourteenth Amendment to the Constitution of the United States.

Plaintiff's contention is not well founded. The statute does have uniform operation. It applies uniformly and generally throughout the State and operates similarly upon all persons similarly situated and equally affected. All who are similarly situated are similarly treated. 59 CJ Sec 309, p 722 et seq; Gunn v. Minneapolis, St. Paul & Sault Ste. Marie Railway Co., 34 ND 318, 158 NW 1004. In Nelson v. Sears, Roebuck & Co., 312 US 359, 363, 85 L ed 888, 891, the Court said:

"In passing on the constitutionality of a tax law 'we are concerned only with its practical operation, not its definition

or the precise form of descriptive words which may be applied to it."

Sections 11 and 20 of the State Constitution do not nor does the Fourteenth Amendment to the Constitution of the United States prohibit or prevent classification provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration. 59 CJ Sec 309, p 722; 12 Am Jur, Constitutional Law, Sec 476, pp 140–142. The legislature by the bracket in question placed sales where the sales price is 24 cents or less in a separate classification and provided that on such sales the retailer shall not add a tax of two per cent to the sales price. The tax upon the sales to which such bracket applies would be a minor fraction of a cent and there was a reasonable basis for classifying such sales as the legislature did and providing that a tax of a minor fraction of a cent should not be added to the purchase price and made a debt against the purchaser.

"Where there is reasonable relation to an object within the governmental authority, the exercise of the legislative discretion is not subject to judicial review. The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legislative considerations in dealing with the matter of policy. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance . . . . The legislature, being familiar with local conditions, is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with

the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power. . . ." Chicago, B. & Q. R. Co. v. McQuire, 219 US 563, 55 L ed 337, 31 S Ct 259.

According to plaintiff's complaint the tax commissioner required plaintiff to pay a tax of two per cent upon its gross receipts from all sales including gross receipts from sales where the sale price was 24 cents or less. The tax commissioner was right in so doing. This was what the plaintiff was required to pay under the provisions of the Retail Sales Tax Act. The complaint does not state facts sufficient to constitute a cause of action against the defendant and the trial court was correct in sustaining the demurrer.

The order appealed from is affirmed.

MILLER, Dist. J., concurs.

BURKE, J. (concurring specially) I concur in the conclusion that the measure of the retailer's liability to the state, under the provisions of Chapter 341, Laws of ND 1949 (Sales Tax Act) is two per cent of his gross sales, less the exemptions specifically set forth in the act. Accordingly, I concur in the affirmance of the order of the District Court and in the syllabus prepared by this Court.

I am also of the opinion that the former decisions of this Court (Jewel Tea Co. v. Tax Commissioner, 70 ND 229, 293 NW 386; Voss v. Gray, 70 ND 727, 298 NW 1; Isakson v. State, 70 ND 505, 296 NW 192; and Federal Land Bank v. Bismarck Lumber Co., 70 ND 607, 297 NW 42, 61 S Ct 1105, 313 US 556, 85 L ed 1518) holding that the sales tax, (Chapter 276 Laws of 1935 and subsequent reenactments thereof) was primarily a tax upon the consumer were correctly decided.

When the legislature decided, in 1935, to levy a tax upon retail sales and to make that tax a tax upon the purchaser at such sales, it was confronted with a serious administrative problem. Obviously, an attempt to collect the tax directly from each purchaser upon the total of his cumulative purchases would be administratively inefficient and wasteful, if not impossible.

In the interest of administrative efficiency the legislature made it the duty of the sellers to collect the tax from the purchasers upon each sale and required the sellers to remit to the state, at stated intervals, the amount of the tax collected. In the interest of simplicity and for the purpose of making the burden of additional bookkeeping as light as possible upon the sellers, the legislature provided that the measure of the sellers' liability should be two per cent of their gross sales.

Section 6 of the 1935 Act provided, among other things, that "Agreements between completing retailers, or the adoption of appropriate rules and regulations by organizations of retailers to provide uniform methods for adding such tax or the average equivalent thereof, . . . which shall first have the approval of the Commissioner, are expressly authorized."

Pursuant to this authorization the retailers met and with the approval of the Tax Commissioner agreed to a uniform method of adding the tax or the average equivalent thereof upon each retail sale. The method agreed to was a bracket system for charging the tax. Under this system the lowest sale taxed was a sale in the amount of fifteen cents upon which a tax of one cent was to be charged. An additional tax of one cent was to be added for each fifty cents increase in the sales price above the base amount of fifteen cents. From the time the 1935 Act went into effect on May 1, 1935, until July 1, 1949, the administrative interpretation of the 1935 Act and the subsequent enactments thereof, has been that it was the duty of retailers to collect the tax from the purchasers at retail sales, according to the approved schedule and that the measure of the retailers' liability for the tax collected was two per cent of their gross sales. Such an interpretation is consistent with the holdings of this court that the tax levied was a tax on the purchaser. The seeming paradox that exists in saying that the collecting agent is liable, not for what he collects, but for two per cent of his gross sales, vanishes if the two are substantially equal to each other. Certainly the legislative acts from 1935 to 1947 intended that the two should be substantially the same, and conferred upon the retailers the right, with the approval of the Tax Commissioner,

to adopt methods which would secure that result. Presumptively the method adopted did secure results which, at least, fully recompensed the retailer, for in so far as I know there were no complaints from retailers during the period the schedule they agreed to, was in force.

In 1949, however, the legislature incorporated into the re-enactment of the sales tax its own schedule of the amount of tax which the retailer might collect from the purchaser. Under this schedule the minimum sale upon which a one cent tax might be charged was a sale in the amount of twenty-five cents. An additional tax of one cent was allowed for each fifty cents increase in sale price above the base price of twenty-five cents. All other parts of the 1949 Act are identical with the cognate sections of prior sales tax acts.

There is nothing in the 1949 Act which indicates a legislative intent to change the measure of the retailers' liability to the state. Presumptively the legislature was aware that the administrative interpretation of prior acts, an interpretation of fourteen years duration, was that the liability of the retailer was two per cent of the gross sales. In the light of this circumstance I do not see how an intent to change the measure of a retailer's liability can be inferred from the adoption of a schedule that might not in some instances permit the retailer to collect the full amount which he must pay to the state. It may be that in such a case the tax levied is in part a tax on the retailer, but if it is, it is one which it was within the power of the legislature to levy.

Judge Grimson has authorized me to say that he concurs in the views expressed in this opinion.

MORRIS, C. J. (dissenting) The plaintiff brings this action to recover the sum of $1,486.96 paid by it under protest as sales taxes exacted under the provisions of Chapter 341 Session Laws ND 1949 (Chapter 57–39, 1949 Supp to RCND 1943). In its complaint the plaintiff alleges that it is engaged in the sale of merchandise in six cities in the State of North Dakota and has qual-

ified under the provisions of the sales tax law by obtaining for each of its stores permits to transact business as a retailer.

The plaintiff then alleges:

"That under the terms and provisions of said sales tax law, above referred to, the plaintiff, in the manner provided by law, made and returned to the Tax Commissioner, the defendant herein, for the period from July 1, 1949 up to and including the 30th day of September, 1949, a true and correct report of all sales of merchandise sold at its various stores in this state during said period, and did at the same time pay to said defendant the total amount of the tax collected on individual sales where the amount involved exceeded the sum of twenty-four cents.

"That under the terms and provisions of said Chapter 341, of the Session Laws of the State of North Dakota for the year 1949, no retailer is permitted to collect from the consumer a tax on individual sales of merchandise where the amount paid for such merchandise is less than twenty-five cents, and no retailer of merchandise is liable for the payment to the State of North Dakota of any tax on such individual sales of less than twenty-five cents.

"That under the terms and provisions of said law plaintiff was not permitted to and did not collect from any purchaser or consumer any tax on individual sales of less than twenty-five cents. That, despite the terms and provisions of said law, the plaintiff, at the time of the payment of the full amount of tax collected under and in accordance with the provisions of said law, was required by the defendant to pay the additional sum of $1486.96, being the amount claimed by the Tax Commissioner as necessary in order to equal two per cent on all gross sales within the State of North Dakota during said period including the individual sales of less than twenty-five cents.

"That under the plain and specific terms and provisions of said Chapter 341 of the Session Laws for 1949, no tax was or is due on individual sales of less than twenty-five cents, and the collection by the defendant of a tax on such sales from the retailer, or in fact the collection of a greater tax from the retailer than such retailer is lawfully permitted under said law to collect

from the purchaser or consumer is invalid, illegal, unreasonable, discriminatory, contrary to the rights of the plaintiff, and wholly unlawful for the reason that the tax due and owing under said law is a tax solely and only against the consumer and not against the retailer.

"That this plaintiff at each store owned and operated by it in the State of North Dakota kept an acurate and correct record of all sales tax which under said law it was permitted to and did collect and, as hereinbefore alleged, remitted to the defendant the full amount of such tax so collected.

"That this plaintiff during said period was wholly unable under the so-called bracket system contained in said law, to collect or recoup any part or portion of the excess tax in the amount of $1486.96, which it was compelled by the defendant to pay and did pay under protest."

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer, and from an order sustaining the demurrer, the plaintiff appeals to this court.

The sales tax law was originally enacted in this state as Chapter 276, Session Laws 1935, in substantially the same form in which it now appears, with the exception of Section 6 of the 1949 act, in which was inserted a bracket system specifying in detail the tax to be charged the consumer.

The 1937 Sales Tax Act (Chapter 249, Session Laws 1937) was held by this court to impose a tax upon the consumer and not upon the retailer, even though the retailer is required to add the tax or its average equivalent to the sales price, and to collect and remit the same to the tax commissioner. Jewel Tea Co. v. State Tax Commissioner, 70 ND 229, 293 NW 386; Voss v. Gray, 70 ND 727, 298 NW 1; Isakson v. State, 70 ND 505, 296 NW 192; and Federal Land Bank v. Bismarck Lumber Co., 70 ND 607, 297 NW 42, 61 S Ct 1105, 313 US 556, 85 L ed 1518.

The 1937 act expired according to its own terms on June 30, 1939. However, each subsequent biennial legislative assembly has reimposed the tax for a two year period, including the present tax which expires on the 30th day of June, 1951. The legis-

lature is presumed to have been familiar with the judicial construction that the 1937 sales tax was a tax upon the consumer and, by its repeated reenactment of the Sales Tax Act in substantially the same terms, to have intended that the same construction should be placed upon subsequent acts, including the one under consideration. State ex rel. Johnson v. Broderick, 75 ND 340, 27 NW2d 849; Eddy v. Krekow, 54 ND 220, 209 NW 225. In view of our former decisions and the subsequent acquiescence therein by the legislature, it can no longer be questioned that Chapter 341, Session Laws ND 1949, imposes a tax upon the consumer and not upon the retailer of tangible personal property.

Section 2, Chapter 341, Session Laws ND 1949 (Section 57–3902, 1949 Supp to RCND 1943) reads as follows:

"There is hereby imposed, beginning the first day of July, 1949 and ending the 30th day of June, 1951 a tax of two percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this act, sold at retail in the state of North Dakota to consumers or users; a like rate of tax upon the gross receipts from the sales, furnishing or service of steam, gas, electricity, water and communication service, including the gross receipts from such sales by any municipal corporation furnishing steam, gas, electricity, water and communication service to the public in its proprietary capacity, except as otherwise provided in this act, when sold at retail in the state of North Dakota to consumers or users; and a like rate of tax upon the gross receipts from all sales of tickets or admissions to places of amusement and athletic events *and the playing of a record on a vending machine, in response to a coin placed in a slot,* except as otherwise provided in this act. The tax herein levied shall be computed and collected as hereinafter provided."

This section is identical with Section 2, Chapter 276, Session Laws 1935, except for the dates and the italicized portion. That portion was added in Section 2, Chapter 308, Session Laws N. D. 1945 and retained in subsequent enactments of the sales tax law.

Section 6 of Chapter 276, Session Laws N. D. 1935 provided:

"Retailers shall, as far as practicable, add the tax imposed under this act, or the average equivalent thereof, to .the sales price or charge and when added such tax shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts.

"Agreements between competing retailers, or the adoption of appropriate rules and regulations by organizations or associations of retailers to provide uniform methods for adding such tax or the average equivalent thereof, and which do not involve price fixing agreements otherwise unlawful, and which shall first have the approval of the Commissioner, are expressly authorized and shall be held not to be in violation of any anti-trust laws of this state."

This provision, in substantially the same language, appears in all reenactments of the sales tax law until 1949. Section 6 of Chapter 341, Session Laws N. D. 1949 provides:

"Retailers shall add the tax imposed under this act, or the average equivalent thereof, to the sales price or charge and when added such taxes shall constitute a part of such price or charge, shall be a debt from the consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts.

"In adding such tax to the price or charge, retailers shall adopt the following bracket system for the application of the tax:

$0.01 to $00.24 ............................... no tax
.25 to .74 ............................... 1¢ tax
.75 to 1.24 ............................... 2¢ tax

. . . . . . . . . . .

9.75 to 10.24 ............................... 20¢ tax
Each additional 50¢ ............. 1¢ additional tax"

The defendant, by demurring to the complaint, admits the truth of all issuable relevant material facts well pleaded. Stern v. Gray, 70 ND 549, 296 NW 419. The allegations of a complaint attacked by demurrer are to be liberally construed. Security State Bank v. Peterson, 49 ND 585, 192 NW 491. Applying

these rules to the allegations of the complaint, it appears that the plaintiff has complied with the sales tax law and has collected the taxes therein prescribed from the consumer, according to the bracket system prescribed by Section 6 as above set forth, covering the period from July 1, 1949, up to and including September 30, 1949; that the amount collected in full compliance with the law is $1,486.96 less than two per cent of the plaintiff's gross sales that were subject to the tax; that the plaintiff has been compelled to pay that sum and did pay it under protest.

Reference to the bracket system schedule discloses that the retailer is not permitted to collect a tax from the consumer on the amount of sales from one cent to twenty-four cents. The plaintiff suggests that this item of the schedule amounts to an exemption of all sales of twenty-four cents or less. I cannot agree with this contention for reasons that will appear from my later discussion of various sections of the act. The plaintiff further contends that if these sales are not exempt and are not to be excluded in computing the gross taxable sales, that the law must be construed so as to require him to pay to the state only the tax that he is able to collect from the consumers by acting in full compliance with the statute, and that if he is required to pay more than the tax so collected, he will be required to pay a tax levied against the consumer which he is not allowed to collect under the statute by reason of the bracket system schedule, and that if the statute is so construed, it is discriminatory and confiscatory, and therefore, unconstitutional.

It is the contention of the defendant tax commissioner that under the language of the statute the gross amount of the plaintiff's nonexempt retail sales are subject to the sales tax, including items of one cent to twenty-four cents, and that the insertion of the bracket system in the statute indicates an intention on the part of the legislature to replace with its own method for adding the average equivalent of the tax, the method which it had formerly permitted the retailers to formulate with the approval of the tax commissioner.

Portions of the statute are ambiguous and some sections of it are seemingly inconsistent with others. Under the issues here

presented it is our duty to construe the statute, and in doing so, to avoid, if possible, a construction that would render the statute of doubtful constitutionality and validity.

"it is the duty of courts to reconcile statutes with the constitution when that can be done without doing violence to the language of either," Martin v. Tyler, 4 ND 278, 60 NW 392.

See also Union Stock Yards Co. v. Nebraska State Railway Commission, 103 Neb 224, 170 NW 908, 172 NW 528.

I start my analysis with the premise that the sales tax is levied upon the consumer.

"What the plaintiff is required to do is to collect the tax and remit. It has employees in the state whose duty it is to collect the price of the goods delivered. The state requires them to assist in collecting revenue. It will be noted that our statute imposes the tax upon the goods sold, to be collected with the payment of the purchase price, and this becomes 'a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts.' (Sec. 6.) The retailer must add the tax or its average equivalent to the price or charge. It is the consumer who pays the tax, and under the provisions of Sec. 7, it is made 'unlawful for any retailer to advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this Act will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded.'

"We must not lose sight of the fact that this tax is laid primarily on the consumer. The fact that the plaintiff failed to collect this tax for the state does not absolve it from its duty. There is no discrimination between nonresident and resident retailers so as to place an unshared burden on the former. The tax is laid only on those who buy within the state; but in order to insure collection of this tax, resort is had to the records of the retailer. To obviate manifest difficulties in assessment and collection, the gross receipts of the retailer are made the basis (Sec. 2) and he adds the tax to his cost price. (Sec. 6.) To assure him that the liability will not fall upon him, he cannot

be compelled by pressure of competition or any other method to absorb the tax. He is not permitted to do so.. (Section 7 quoted above.)" Jewel Tea Co. v. State Tax Commissioner, 70 ND 229, 293 NW 386.

In the next case involving the sales tax, Voss v. Gray, 70 ND 727, 298 NW 1, after quoting a portion of the 1937 act, the majority of this court said:

"Without further reciting the provisions of the act it is enough now to say that the tax thus imposed is a tax on the consumer."

And in his dissenting opinion, Judge Christianson said:

"The Sales Tax Act of this state imposes a tax upon the purchaser or consumer, and makes it the duty of the seller to add the amount of the tax to the sales price or charge and to collect and remit the tax to the tax commissioner. Jewel Tea Co. v. State Tax Comr. ante, 229, 293 NW 386. The retailer may not assume or pay the tax, but is required to add the tax or its equivalent to the sales price or charge, and the tax so added constitutes a part of the price or charge. It is unlawful for the retailer to pay the tax or to hold out or state directly or indirectly that he will absorb the tax or any part thereof, or make a refund of any part of the tax."

The statutory language referred to has been carried into the present act. It means the same now as it did then. Great Northern Ry. Co. v. Ward County, 54 ND 75, 208 NW 768; Gimble v. Montana-Dakota Utilities Co., ante 581, 44 NW2d 198.

"As an aid in the construction of a statute, it is to be assumed or presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject, and that the statute was enacted in the light of the judicial construction that the prior enactment had received, or in the light of such existing judicial decisions as have a direct bearing upon it." 50 Am Jur, Statutes, Section 321, Page 312.

This court has spoken clearly to the effect that the sales tax is levied on the consumer and *not* on the retailer, thereby leaving no room for an alternative construction that it is a hybrid tax levied upon both. The strongest expressions appear in syllabi

by the court. In paragraph 2 of the syllabus in Jewel Tea Co. v. State Tax Commissioner, supra, we said:

"Chapter 249 of the Session Laws of 1937, known as the 'Sales Tax Act,' imposes the tax upon the consumer in this state, and not upon the retailer, even though the retailer is required to add the tax, or its average equivalent, to the sales price or charge, and to collect the same and remit the tax to the tax commissioner."

In paragraph 1 of the syllabus in Federal Land Bank v. Bismarck Lumber Co., 70 ND 607, 297 NW 42, we said:

"The tax imposed by the State Sales Tax Act (Sess Laws 1937, chap 249) is laid upon the buyer and not upon the seller."

The correctness of these statements is emphasized in the dissenting opinion of Judge Christianson in Federal Land Bank v. Bismarck Lumber Co., wherein he said:

"The state sales tax is not a tax imposed upon the retailer for the privilege of engaging in business or for the privilege of making the sale. The law lays the burden of the tax upon the purchaser. Jewel Tea Co. v. State Tax Commissioner, ante, 229, 293 NW 386. It places upon the retailer the duty to collect the tax from the purchaser, and to account for and pay the tax collected over to the State Tax Commissioner (Monamotor Oil Co. v. Johnson, 292 US 86, 93, 78 L ed 1141, 1147, 54 S Ct 575), but the law does not contemplate that the retailer shall pay the tax. On the contrary, he is forbidden to assume the tax or to hold out to purchaser that the tax 'will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded.' Sales Tax Act, Sec 7.

. . . . . . . . . . .

"The state sales tax is an enforced contribution exacted by the State in the exercise of its taxing power to provide for the support of the government. 61 CJ pp 68, 69. It is a substantial, direct and discernible tax imposed upon the purchaser of personal property, which the seller is required to collect from the purchaser and pay over to the State Tax Commissioner."

In addition to Section 7 which now provides that:

"No retailer shall advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this act shall be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded."

(which is identical in meaning with Section 7 of the 1935 act) there are other sections that indicate that it was not the intention of the legislature to require the retailer to assume or absorb the tax, but that he should pay only the tax that he was required to collect from the consumer.

Section 1 of the act is devoted primarily to definitions. But there are some provisions that indicate an intention to adhere strictly to the collection of the tax from the consumer and to exclude the retailer from bearing any portion of the tax burden, other than that incident to collection and remittance. The definition of gross receipts provides:

"discounts for any purposes allowed and taken on sales shall not be included, nor shall the sale price of property returned by customers when the full sale price thereof is refunded either in cash or by credit."

It is further provided that where payment of the sale price is extended over a period longer than sixty days, the retailer is required to remit the sales tax only upon the actual cash received by him during each quarterly period.

It may also be noted that Section 2, which purports to impose the tax, qualifies that imposition by the statement "except as otherwise provided in this act" and by the further statement that "The tax herein levied shall be computed and collected as hereinafter provided."

In Section 4 we find that "Taxes paid on gross receipts represented by accounts found to be worthless and actually charged off, for income tax purposes may be credited upon subsequent payment of the tax herein provided;" Section 7, which we have quoted above, not only forbids the retailer to assume or absorb the tax, but if he does so, Section 16 provides that he "shall be

guilty of a misdemeanor, punishment for which shall be a fine of not more than one thousand dollars or imprisonment for not more than one year, or both such fine and imprisonment, in the discretion of the court;" . . . The tenor of these sections clearly indicates that the retailer must collect and remit, but not pay the tax out of his own pocket.

The heart of this controversy is the failure of collections made pursuant to the bracket system schedule, to produce an amount equal to two per cent of the gross nonexempt sales made by the plaintiff. Under our prior sales tax statutes, Section 6 permitted a voluntary schedule to be adopted by the retailers, subject to the approval of the tax commissioner. The 1949 act contains an inflexible schedule. This schedule must be considered in connection with the other portions of the act, and particularly with the first paragraph of Section 6 of which the schedule is a part. This paragraph requires retailers to add the tax or "average equivalent" of the tax to the sale price. The adoption of the bracket system does not denote an intention on the part of the legislature to shift any part of the tax burden from the consumer to the retailer, but rather to fix a schedule that would in its judgment cause the consumer to pay a tax of two per cent in the aggregate on all nonexempt sales. In this case, under the facts as pleaded in the complaint, the application of the schedule has failed to produce that intended result and the collections are $1,486.96 less than the desired two per cent. But this discrepancy between the intended and the actual result does not create a new taxpayer and require the retailer to make up the difference from his own funds. It is clear that our statute does not levy separate taxes on the consumer and the retailer, as did the Wyoming statute under consideration in Walgreen Co. v. State Board of Equalization, 62 Wyo 288, 166 Pac2d 960, which levied a sales tax of the equivalent of two per cent on sales amounting to twenty-five cents or over to be paid by the consumer and a tax of one per cent on sales of twenty-four cents or less which the purchaser was not required to pay, but which was assumed and paid by the retailer. Neither is ours an exercise tax on the privilege of operating a retail mercantile busi-

ness, as was the California tax considered in Roth Drugs v. Johnson, 13 Cal App2d 720, 57 Pac2d 1022.

Under our statute the retailer is made the medium of collection and not the source of the tax. It covers all nonexempt sales of tangible personal property. Various exemptions are set forth in the act in sections other than the one providing for the bracket system. They are based upon the nature of the transaction, the kind of property involved, or the classification of the buyer or seller. It is suggested that the 1949 act extends exemption to sales of twenty-four cents or less because the first item of the bracket system schedule governing the collection of the tax from the consumer provides that no tax shall be collected on those sales. But this schedule is clearly not intended as a statement of levy or exemption. The units of our monetary system do not make possible collection of a tax from the consumer of exactly two per cent on all sales. If only the monetary units are to be used with reference to small amounts, the choice must be made between collecting from the consumer an exaction up to 100 per cent or making no collection at all. To avoid both horns of this dilemma, the legislature devised the inexact but substantially just method of collecting the "average equivalent." The purpose of this device was to reach an average in the process of collection that would bring to bear upon the consumer generally a tax of two per cent. In former acts the "average equivalent" was left to the determination of the retailers and the tax commissioner. The 1949 act reduced the "average equivalent" to a statutory schedule which, in the judgment of the legislature, would produce on the average the equivalent of two per cent of the gross nonexempt sales. Sales from one cent to twenty-four cents were included in the schedule, not excepted from it. They are a part of the basis for the "average equivalent" as determined by the legislature and not an exemption from the tax. On the other hand, it cannot be said that the adoption of the schedule imposes on the retailer liability for any deficiency resulting from the failure of the application of the schedule to produce the actual and exact equivalent of two per cent of the retailers gross nonexempt sales. When I consider the entire act and reconcile and

give effect to its various provisions, I reach the conclusion that all of the tax collected under the bracket system belongs to the state, even though it exceeds two per cent of the retailers gross taxable sales, and that only the tax collected by the retailer, acting in full compliance with the law, belongs to the state and must be remitted to the tax commissioner.

"The ultimate burden of the tax, both in form and in substance, is thus laid upon the buyer, for consumption, of tangible personal property, and measured by the sales price. Only in event that the seller fails to pay over to the city the tax collected or to charge and collect it as the statute requires, is the burden cast on him." McGoldrick v. Berwind-White Coal Min. Co., 309 US 33, 84 L Ed 565, 60 S Ct 388, 128 ALR 876.

My conclusion in this respect is further buttressed by the fact that a construction of the act which would require the retailer to pay out of his own pocket the difference between the tax that he is allowed to collect from the consumer according to the bracket system schedule and two per cent of the gross taxable sales would compel him, under the facts as pleaded in this complaint, to pay a part of the consumers tax and would result in doubt as to the constitutionality of the statute. See Winslow-Spacarb Inc. v. Evatt, 144 Ohio St 471, 59 NE2d 924; National Ice and Cold Storage Co. v. Pacific Fruit Express Co., 11 Cal2d 283, 79 Pac2d 380.

Inherent in my construction of the statute is the question of the burden of proof. It is a general rule that tax statutes are construed most strictly against the government and in favor of the citizen. Goldberg v. Gray, 70 ND 663, 297 NW 124. On the other hand, laws which exempt property from taxation will receive a strict construction as against the claimant. In re McKee's Estate, 71 ND 545, 3 NW2d 797; Engstad v. Grand Forks County, 10 ND 54, 84 NW 577; American Bridge Co. v. Smith, 352 Mo 616, 179 SW2d 12, 157 ALR 798 and annotation. The purpose of the act under consideration is to levy a tax of two per cent on sales of nonexempt tangible personal property to be collected from the consumer. In order to facilitate the collection, the retailer is required to report his taxable sales to

the tax commissioner and two per cent of this amount is, prima facie, the sum he has collected. The bracket system schedule represents the judgment of the legislature as to consumer payments that will yield that amount on the basis of an "average equivalent." The plaintiff alleges that the application of the schedule has not produced the full two per cent. It (the plaintiff) is not the taxpayer and the excess of two per cent of its taxable sales over collections under the schedule is not an exemption. But the situation is somewhat analogous to that presented by a tax exemption claim. A retailer's presumptive liability is two per cent of his taxable sales. If he claims that his liability is actually less than that amount, he has the burden of proving the lesser liability to the extent of a substantial amount. Mathematical exactness is not a requirement of uniformity. Blauaer's, Inc. v. Philadelphia, 330 Pa 340, 198 Atl 889. The law disregards trifles. Baird v. Zahl, 58 ND 388, 226 NW 549; Robert v. Western Land Ass'n, 43 Minn 3, 44 NW 668; Western Land Ass'n v. McComber, 41 Minn 20, 42 NW 543.

The complaint states a cause of action and the case should go back to the district court for a trial on the merits.